James Ronald BERRY, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F-86-350.

Court of Criminal Appeals of Oklahoma.

April 19, 1988.

Mark A. Graziano, Asst. Public Defender, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., M. Caroline Emerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, James Ronald Berry, was charged in the District Court of Tulsa County in Case No. CRF–85–895 with three counts of Assault and Battery With Intent to Kill. He was convicted of the lesser included offense of Assault and Battery With a Dangerous Weapon in Counts I and III for which he received a sentence of five (5) years imprisonment on each count and was convicted of Assault and Battery With Intent to Kill in Count II for which he received a sentence of twenty (20) years imprisonment. All sentences were ordered to run consecutively. From these judgments and sentences he appeals.

On March 1, 1985, Velma Jean Berry, the appellant's sixty-nine year old mother, Connie Jo Berry, the appellant's sister, and Beau Berry, the appellant's nine-year old crippled son, were all severely beaten with a baseball bat by the appellant at the Jenks, Oklahoma, home of Velma Jean and Beau Berry. In the early evening, an argument ensued between Velma Jean and the appellant whereupon he grabbed a baseball bat from the front porch, returned inside the house, swung the bat at Velma Jean, missed her, and vowed that he would kill both Beau and Velma Jean when Connie Jo arrived. When Connie Jo arrived, she observed her mother sitting on the front porch with Beau, and the appellant standing nearby, not knowing that he had a baseball bat hidden behind him. An argument then ensued between Connie Jo and the appellant, and as she turned to step off the porch to leave, the appellant hit her in the back of the neck with the bat. He struck her with such force that the bat broke in half and knocked Connie Jo unconscious onto the front yard. Velma Jean then jumped up and pleaded with the appellant to stop, but he hit her with another bat knocking her unconscious. He then returned to Connie Jo, who had regained consciousness and continued to administer blows to her head and body. During the appellant's beating of Connie Jo, Velma Jean regained consciousness and shouted to Beau to run in the house, lock the door and call the police. The appellant heard her, knocked her unconscious a second time and chased Beau into the house, swinging the bat at him. He then proceeded to administer blows to his son's crippled leg and his head. The appellant then returned to the front yard and again beat his mother, who had since regained consciousness and was trying to protect her daughter. Cathy Waddington, Velma Jean's next door neighbor, heard Velma Jean's and Connie Jo's cries for help and called the police. When the police arrived, they observed the two women laying in the front yard and the appellant threatening to kill them if they filed charges on him. Beau was found inside the house in a weakened condition with his glasses stuck to his blood-covered face and head. All three were transported to the hospital. Connie Jo sustained a broken arm, broken leg and severe injuries to the head, which required two brain surgeries. Velma Jean and Beau were both treated for severe injuries to the body and head.

 In his first assignment of error, the appellant contends that because there was evidence of both drug-induced insanity and involuntary intoxication, the trial court erred when it failed to give his requested jury instructions on the defenses of insanity and involuntary intoxication. He claims that as a result of his prolonged use of Valium from 1977 until the time of the incident, he was incapable of distinguishing between right and wrong. At the outset, we note that where there is no independent evidence presented tending to prove insanity, an instruction on insanity is not required. *Johnson v. State*, 621 P.2d 1162

(Okl.Cr.1980). In the instant case, the appellant presented neither lay nor expert testimony in his defense to remove the presumption of sanity. *Rogers v. State,* 721 P.2d 820 (Okl.Cr.1986). A psychiatric evaluation of the appellant conducted by Dr. Thomas A. Goodman of the Department of Psychiatry, Tulsa Medical College, revealed that while the appellant suffered from a chronic personality disorder, with borderline addictive features, including a history of drug abuse, he concluded that the appellant was aware of the morality and criminality of his actions. Furthermore, testimony of Velma Jean and Connie Jo supported the presumption of sanity. They both stated that while the appellant was an angry and moody individual, he appeared to know right from wrong the day of the beatings. Both also stated that although they were aware of the appellant's previous drug abuse, neither were aware of usage during the past year. Testimony further revealed that when the appellant was aware that the neighbor had been alerted, and that the police and medical unit were on their way, he knew he was unable to escape, and tried to convince the police that he wasn't guilty by pretending that he too was a victim. As he layed on the ground, he turned to Velma Jean and Connie Jo and threatened to finish what he started if they turned him in to the police. During the incident, Velma Jean managed to obtain a bat and hit the appellant over the head as a means of self defense, causing injury to him. Dr. Douglas Moore treated the appellant at Saint Francis Hospital emergency room shortly after the incident. He testified that the appellant was alert and oriented to the time and place, did not appear to be intoxicated or confused, and was very cooperative.

In light of these facts, we conclude that there was no evidence presented which would have any tendency to show that the appellant had taken any drugs the day of the crimes or within the year before the commission of the offenses. It should also be noted that the trial court did instruct the jury on the defense of intoxication and that it could be established by proof of intoxication caused by drugs. The record also reveals that the appellant was alert and coherent on March 1, 1985, and could distinguish between right and wrong. When considered as a whole, the instructions that were given did sufficiently inform the jury of the applicable law in the case and the defenses available to the appellant. This assignment is without merit.

■ In his second assignment of error, the appellant contends that the trial court erred when it admitted his medical records of March 1, 1985, into evidence. He claims that the communications were privileged because as a patient he had the right to refuse to disclose or prevent another from disclosing confidential material made to a person authorized to practice medicine for the purpose of diagnosis or treatment of his physical, mental or emotional condition. 12 O.S.1981, § 2503(A)(2) and (B). We disagree. The medical records as to the appellant's mental condition on March 1, 1985, were relevant to establish an element of the crime and were not privileged information but fit within an exception to the privilege. 12 O.S.1981, § 2503(D)(3).

■ The appellant next alleges that the trial court erred in allowing Police Officer Bruce Davis to give an expert opinion as to the severity of Connie Jo Berry's injuries, which in effect prejudiced the jury in rendering the maximum sentence for his assault upon her. Our review of the record reveals that the testimony of Officer Davis was relevant to establish the appellant's guilt that he assaulted Connie Jo, intending to kill her, and it was helpful to the jury on the issue of punishment. The officer's testimony was well within the confines of 12 O.S.1981, §§ 2702 and 2704 regarding expert testimony. We also find that the prejudicial effect on the jury cannot be inferred by the return of the twenty year sentence because Officer Davis' testimony concerning Velma Jean Berry and Beau Berry did not result in the maximum sentence in these two counts. Moreover, it is a well established rule that the trial court should be given wide latitude in determining the admissibility of expert testimony or expert opinion. *Smith v. State,* 656 P.2d 277 (Okl.

Cr.1982). This assignment is without merit.

■ The appellant next alleges that the trial court erred in admitting into evidence cumulative testimony as well as photographs as to the injuries received by Velma Jean and Connie Jo Berry. The photographs in the present case are 25 5 × 7 clear photographs of Velma Jean and Connie while at the hospital. Thirteen of the photographs depict Velma Jean's various injuries including a bruised and swollen face and head, bruised shoulder, and a broken arm. Twelve of the photographs depict Connie Jo's bruised and swollen neck, broken arm, and a broken and bandaged head. This Court has repeatedly held that the question of whether the probative value of the photograph outweighs any possible prejudice is a matter falling within the sound discretion of the trial court. Absent a clear abuse of that discretion, this Court will not disturb the lower court's ruling. *Glidewell v. State*, 626 P.2d 1351 (Okl.Cr. 1981). The probative value of the pictures is evident in that they corroborate the victim's testimony as well the testimony of all emergency medical and police personnel who observed the condition of the victims, and they illustrate the extent of their injuries. The photographs also serve to illustrate the extent of the force used, which tends to establish the intent to kill. The trial court properly admitted the testimony and photographs of the victims' injuries; therefore, this assignment is without merit.

■ Next, the appellant alleges that the prosecution committed reversible error by making misstatements of the law, comments on the appellant's right to remain silent, and comments which aroused passion, prejudice and sympathy in the jury. It is a well settled rule that only when argument by counsel for the State is grossly improper and unwarranted upon some point which may affect the appellant's rights can a reversal for improper argument be justified. *Frazier v. State*, 607 P.2d 709 (Okl.Cr.1980). Any alleged misstatements by the prosecution regarding voluntary intoxication were harmless in that the instructions given on that issue were clear instructions which contained all the necessary and applicable law. Careful review of the record also indicates that any alleged comments on the failure to testify were no more than a reference to the appellant's failure to present any evidence to refute the State's case. *Koonce v. State*, 696 P.2d 501 (Okl.Cr.1985). The record also reflects that the alleged comments which inflamed the jury were not so improper as to arouse the passions of the jury. *Young v. State*, 695 P.2d 868 (Okl. Cr.1985). In light of the evidence presented which supports the guilt of the appellant, the prosecutor's overall comments were neither improper nor intentionally designed to unfairly prejudice the appellant. This assignment is without merit.

■ Finally the appellant asserts that the sentence imposed by the trial court was excessive and that his prison sentences should run concurrently and not consecutively. Each of the sentences imposed is well within the statutory limits and will not be disturbed on appeal as being excessive. *Grant v. State*, 703 P.2d 943 (Okl.Cr.1985). Moreover, the decision to require sentences to be served consecutively rather than concurrently is a decision resting in the sound discretion of the trial court. *Lloyd v. State*, 654 P.2d 645 (Okl.Cr.1982). Under the facts and circumstances of this case, it is our opinion that the trial court did not abuse its discretion. Therefore, this assignment is groundless.

The judgments and sentences are AFFIRMED.

PARKS, J., concurs.

BRETT, P.J., concurs in results.