2010 OK CR 6

**Kendrick Antonio SIMPSON, Appellant**

v.

**STATE of Oklahoma, Appellee.**

**No. D–2007–1055.**

Court of Criminal Appeals of Oklahoma.

March 5, 2010.

---

Stephen Deutsch, Jennifer Chance, Assistant District Attorneys, Oklahoma City, OK, attorneys for the State at trial.

William Campbell, Larry Tedder, Oklahoma City, OK, attorneys for the defendant at trial.

William H. Luker, Kathleen M. Smith, Oklahoma Indigent Defense System, Norman, OK, attorneys for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Jennifer J. Dickson, Assistant Attorney General, Oklahoma City, OK, attorneys for State on appeal.

*OPINION*

C. JOHNSON, Presiding Judge.

¶ 1 Appellant, Kendrick Antonio Simpson, was tried by a jury and convicted of First Degree Murder with Malice Aforethought (Counts I and II), Discharging a Firearm

with Intent to Kill (Count III) and Possession of a Firearm After Former Conviction of a Felony (Count IV) in the District Court of Oklahoma County, Case No. CF 2006–496. The State filed a Bill of Particulars alleging four aggravating circumstances: (1) the defendant was previously convicted of a felony involving the use or threat of violence; (2) the defendant knowingly created a great risk of death to more than one person; (3) the murder was especially heinous, atrocious, or cruel; and (4) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.[1] The jury found Appellant guilty on each count charged and found the existence of all alleged aggravating circumstances as to each of Counts I and II. It assessed punishment at death on Counts I and II, life imprisonment on Count III and ten years imprisonment on Count IV. The trial court sentenced Appellant accordingly. From this Judgment and Sentence Appellant has appealed.[2]

**I. FACTS**

¶ 2 On the evening of January 15, 2006, Jonathan Dalton, Latango Robertson and Appellant decided to go to Fritzi's hip hop club in Oklahoma City. Prior to going to the club, the three drove in Dalton's white Monte Carlo to Appellant's house so that Appellant could change clothes. While at his house, Appellant got an assault rifle which he brought with him.[3] Before going to Fritzi's, the men first went to a house party where they consumed alcohol and marijuana. When they left the party, Appellant put the assault rifle into the trunk of the Monte Carlo, which could be accessed through the back seat.

¶ 3 The three arrived at Fritzi's between midnight and 1:00 a.m. on January 16. Once inside, they went to the bar to get a drink. Appellant and Dalton also took a drug called

1. 21 O.S.2001, § 701.12(1)(2)(4)(7).

2. Appellant's Petition in Error was filed December 20, 2007. Appellant's Brief in Chief was filed October 27, 2008. Appellee's Brief was filed February 24, 2009. Appellant's Reply Brief was filed March 13, 2009. This matter was

submitted to this Court on March 6, 2009. Oral Argument was held on September 29, 2009.

3. There was testimony that this weapon was an AK–47 or SKS assault rifle.

"Ecstasy." After getting their drinks, Dalton and Robertson sat down at a table while Appellant walked around. When Appellant walked by London Johnson, Anthony Jones and Glen Palmer, one of the three apparently said something to him about the Chicago Cubs baseball cap that he was wearing. Appellant went back to the table and told Dalton and Robertson that some guy had given him a hard time about his cap. At some point, Appellant approached Johnson, Jones and Palmer again. During this encounter, Appellant told them that he was going to "chop" them up.[4] After making this threat, Appellant walked away. He returned a short time later and walked up to Palmer. Appellant extended his hand and said, "We cool." Palmer hit Appellant in the mouth knocking him to the floor. Appellant told Dalton and Robertson that he wanted to leave and the three of them left the club.

¶ 4 Out in the parking lot, Appellant, Dalton and Robertson went to Dalton's Monte Carlo. Before leaving, they talked with some girls who had come out of the club and were parked next to them. The girls told the men to follow them to a 7–11 located at NW 23rd Street and Portland. When they arrived at the store, Appellant, Dalton and Robertson backed into a parking space toward the back door and the girls pulled in next to the pumps. While the men were sitting in the Monte Carlo, they saw Johnson, Jones and Palmer drive into the parking lot in Palmer's Chevy Caprice. They recognized Palmer as the person who had hit Appellant at Fritzi's. Dalton told Appellant to "chill out" but Appellant was mad and wanted to retaliate against Palmer. When Palmer drove out of the parking lot onto 23rd Street and merged onto I–44, Appellant told Dalton to follow them.

¶ 5 While they were following the Chevy, Appellant, who was sitting in the front passenger seat, told Robertson, who was sitting in the back seat, to give him the gun. He told Robertson that if he had to get the gun himself, there was going to be trouble. Robertson reached through the back seat into the trunk and retrieved the gun for Appellant. Dalton followed the Chevy as it exited the interstate onto Pennsylvania Avenue. He pulled the Monte Carlo into the left lane beside the Chevy as they drove on Pennsylvania Avenue and Appellant pointed the gun out his open window and started firing at the Chevy.

¶ 6 When the Chevy was hit with bullets, Palmer was driving, Jones was sitting in the front passenger seat and Johnson was in the back seat. Johnson heard about twenty rapid gun shots and got down on the floor of the car. He did not see the shooter but noticed a white vehicle drive up beside them. The Chevy jumped the curb and hit an electric pole and fence before coming to a stop. Palmer and Jones had been shot. Jones had been shot in the side of his head and torso and was unconscious. Palmer had been shot in the chest. He was initially conscious and able to talk but soon lost consciousness when he could no longer breathe. Johnson tried to give both Jones and Palmer CPR but was unsuccessful. He flagged down a car that was driving by and asked the driver to get help. Both Palmer and Jones died at the scene from their gunshot wounds.

¶ 7 After he fired at the Chevy, Appellant said, "I'm a monster. I just shot the car up." He added, "They shouldn't play with me like that." Dalton kept driving until they reached a residence in Midwest City where he was staying. They dropped the gun off and switched cars, and then Dalton, Robertson and Appellant went to meet some girls they had talked to at Fritzi's.

## II. OPPORTUNITY TO PRESENT A COMPLETE DEFENSE

¶ 8 Prior to trial, the defense filed a notice of intent to offer evidence of mental and/or psychological defect, deficiency, diminishment, and/or other such and related condition of defendant. Dr. Phillip Massad, a clinical psychologist, conducted a psychological evaluation of Appellant and issued a report in which he found it more likely than not that Appellant suffered from Post Trau-

---

4. Johnson testified at trial that this meant to him that Appellant was going to shoot at them with a "chopper" which was an AK–47.

matic Stress Disorder (PTSD). The State filed a motion to preclude the defense from offering testimony about Appellant's PTSD in the first stage of trial. A hearing was held on this motion and the trial court granted the State's motion. Appellant complains in his first proposition that this ruling was in error and violated his constitutional right to present a complete defense.

¶ 9 It is true, as Appellant asserts, that the United States Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986). A defendant's due process right under the Fifth Amendment and to compulsory process under the Sixth Amendment includes the right to present witnesses in his or her own defense. *United States v. Dowlin,* 408 F.3d 647, 659 (10th Cir.2005); *see also Washington v. Texas,* 388 U.S. 14, 18–19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). "The right to offer the testimony of witnesses ... is in plain terms the right to present a defense.... This right is a fundamental element of due process of law." *Washington,* 388 U.S. at 19, 87 S.Ct. at 1923. *See also Coddington v. State,* 2006 OK CR 34, ¶ 46, 142 P.3d 437, 450–51. It is also true, however, that "[i]n the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Gore v. State,* 2005 OK CR 14, ¶ 21, 119 P.3d 1268, 1275, citing *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). Further, the admissibility of evidence is within the discretion of the trial court, which will not be disturbed absent a clear showing of abuse, accompanied by prejudice to the accused. *Jackson v. State,* 2006 OK CR 45, ¶ 48, 146 P.3d 1149, 1165.

¶ 10 Whether Appellant was denied the right to present a defense ultimately turns on whether the evidence at issue was admissible. In order to be admissible, evidence must be relevant. 12 O.S.2001, § 2402. " 'Relevant evidence' means evidence having any tendency to make the existence of any

fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." 12 O.S.2001, § 2401. Appellant argues that the evidence that he suffered from PTSD was relevant to the issue of his intent at the time of the offense. The transcript of the hearing on the State's motion to preclude defense testimony about PTSD in the first stage of trial reveals that after speaking with Dr. Massad and reviewing his report, the prosecutor believed that Dr. Massad would not be able to testify that Appellant's PTSD precluded Appellant from forming the intent to kill. Contrary to this, the defense counsel believed that Dr. Massad would testify that "it is possible that the PTSD affected him to the extent that he was not able to form the specific intent." Although Dr. Massad did not testify at the motion hearing, he did testify during the second stage of Appellant's trial. At trial, Dr. Massad testified that although PTSD, especially when combined with alcohol and drug usage, could make a person hypersensitive and increase the likelihood that they would overreact to a situation, he acknowledged that he had not administered tests on Appellant to determine whether Appellant knew what he was doing at the time of the shooting. Thus, Dr. Massad could not testify as to how Appellant's PTSD could affect his intent at the time of the crime.

¶ 11 The record before this Court supports the prosecutor's position that Dr. Massad could not testify that Appellant's PTSD precluded him from forming the intent to kill. Accordingly, the evidence that Appellant suffered from PTSD was neither relevant to the intent element of the crime charged nor was it relevant to his defense of voluntary intoxication, which requires a showing that Appellant's intoxication rendered it impossible to form the intent element of the crime charged. *Jackson v. State,* 1998 OK CR 39, ¶ 67, 964 P.2d 875, 892. The trial court's ruling precluding the defense from presenting this evidence during the first stage of trial was not an abuse of discretion and did not deprive Appellant of his constitutional right to present a defense. There was no error here.

## III. SUFFICIENCY OF THE EVIDENCE

¶ 12 Appellant argues in Proposition II that the evidence presented at trial was insufficient to prove beyond a reasonable doubt all of the elements of First Degree Murder. We review sufficiency of the evidence claims in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203–04, *citing Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560, 571 (1979). Further, a reviewing court must accept all reasons, inferences, and credibility choices that tend to support the verdict. *Warner v. State*, 2006 OK CR 40, ¶ 35, 144 P.3d 838, 863.

¶ 13 Appellant first complains in this proposition that the only evidence implicating him in commission of the crimes for which he was convicted in this case was the trial testimony of Jonathan Dalton and Latango Robertson. This accomplice testimony, he asserts, was not sufficiently corroborated. "A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." 22 O.S.2001, § 742. Rather, accomplice testimony must be corroborated with evidence, which standing alone tends to link the defendant to the commission of the crime charged. *Pink v. State*, 2004 OK CR 37, ¶ 15, 104 P.3d 584, 590. An accomplice's testimony need not be corroborated in all material respects but requires "at least one material fact of independent evidence which tends to connect the defendant with the commission of the crime." *Cummings v. State*, 1998 OK CR 45, ¶ 20, 968 P.2d 821, 830. "Further, circumstantial evidence can be adequate to corroborate the accomplice's testimony." *Id.*

¶ 14 It is clear that both Dalton and Robertson were accomplices.[5] *Anderson v. State*, 1999 OK CR 44, ¶ 23, 992 P.2d 409, 418. Thus, it was indeed necessary that Dalton's and Robertson's testimony be properly corroborated. While all evidence concerning the actual shooting was provided through Dalton's and Robertson's testimony, additional evidence connecting Appellant with the commission of the crimes was provided through the testimony of other witnesses. Although Appellant denied committing the crimes, he admitted to police that he was with Dalton and Robertson at Fritzi's and that he had been hit in the face at the club on the night that the crimes occurred. London Johnson, the surviving victim, testified about Appellant's altercation with Palmer at the club and testified specifically about Appellant's threat to "chop" up Palmer, Jones and Johnson. This, Johnson stated, was a threat to shoot at them with an AK–47 or machine gun. Other witnesses placed Appellant, Dalton and Robertson inside Dalton's Monte Carlo in the parking lot at Fritzi's after the incident in the club. One witness testified that Appellant was not the driver and the other witness testified that Appellant was not in the back seat. These witnesses saw the Monte Carlo again a short time later at the 7–11 and watched it follow Palmer's Chevy Caprice when Palmer left the convenience store parking lot. This evidence provided the necessary independent evidence of at least one material fact tending to connect Appellant with the shooting. Thus, the accomplices' testimony was properly corroborated.

¶ 15 Appellant also alleges in this proposition that the evidence, when viewed in the light most favorable to the State, was insufficient to prove beyond a reasonable doubt all of the elements of First Degree Murder. Appellant argues specifically that the evidence did not show his intent to kill, but rather, supports a finding that he intended to terrorize Palmer, Jones and Johnson by shooting at their car. "First Degree Murder requires deliberate intent to end hu-

---

5. The trial court instructed the jury that Dalton and Robertson were accomplices as a matter of law. Both Dalton and Robertson were initially charged, along with Appellant, with two counts of First Degree Murder and one count of Discharging a Firearm with Intent to Kill, but prior to trial they each entered guilty pleas to the crime of Accessory After the Fact.

man life, which can be instantly formed and inferred from the fact of the killing." *Jones v. State*, 2006 OK CR 17, ¶ 8, 134 P.3d 150, 154. *See also Hogan v. State*, 2006 OK CR 27, ¶ 22, 139 P.3d 907, 919. The evidence presented at trial showed that Appellant threatened to "chop up" Palmer, Jones and Johnson, and then he followed through with this threat by having Dalton drive up beside Palmer's car while he shot approximately twenty rounds at the car, hitting and killing Palmer and Jones. This evidence was sufficient to support, beyond a reasonable doubt, the finding by a rational trier of fact that Appellant shot at Palmer's car with the intent to kill the individuals inside. *Spuehler*, 1985 OK CR 132, ¶ 7, 709 P.2d at 203–04. *See also Powell v. State*, 2000 OK CR 5, ¶¶ 47–50, 995 P.2d 510, 523–24.

## IV. LESSER INCLUDED OFFENSE INSTRUCTIONS

¶ 16 In his third proposition, Appellant argues that the trial court erred in failing to instruct the jury, *sua sponte*, on the lesser crime of Second Degree Depraved Mind Murder. Again, we review a trial court's decision on the submission of lesser included offense instructions for an abuse of discretion. *Jackson*, 2006 OK CR 45, ¶ 24, 146 P.3d at 1159. Further, if a defendant convicted of the charged offense complains that the trial court should have given, *sua sponte*, some lesser offense instruction, this Court will consider whether the trial court's omission amounts to plain error. *McHam v. State*, 2005 OK CR 28, ¶ 21, 126 P.3d 662, 670.

¶ 17 It is true that the trial court must instruct on any lesser included offense warranted by the evidence. *Jones*, 2006 OK CR 17, ¶ 6, 134 P.3d at 154, *citing Shrum v. State*, 1999 OK CR 41, 991 P.2d 1032 (lesser included instructions should be given if supported by any evidence). An underlying requirement of *Shrum*, however, is that a lesser offense instruction should not be given unless the evidence would support a conviction for the lesser offense. *Jones*, 2006 OK CR 17, ¶ 6, 134 P.3d at 154. *See also Harris v. State*, 2004 OK CR 1, ¶ 50, 84 P.3d 731, 750

(to determine whether lesser-included offense instructions are warranted, this Court looks at whether the evidence might allow a jury to acquit the defendant of the greater offense and convict him of the lesser). "To warrant an instruction on depraved mind murder, the evidence must reasonably support the conclusion that the defendant committed an act so imminently dangerous to another person or persons as to evince a state of mind in disregard for human life, but without the intent of taking the life of any particular individual." *Jackson*, 2006 OK CR 45, ¶ 26, 146 P.3d at 1160.

¶ 18 Appellant argues that an instruction on this lesser offense was warranted because at most, the evidence showed that he simply fired into the car in which Palmer, Jones and Johnson were riding. He asserts that while there was evidence that he may have been seeking revenge for being hit in the face, there was no evidence that he intended to kill his victims. Thus, he claims that this was a classic case of depraved mind murder. We find otherwise. In light of the testimony that Appellant threatened to "chop" up Palmer and his companions, instructed Dalton to follow Palmer's car and then shot as many as twenty rounds at the moving vehicle with an assault rifle, we find that the evidence did not reasonably support the conclusion that Appellant did not intend to kill the men in the Chevy. An instruction on Second Degree Depraved Mind Murder was not warranted by the evidence and the trial court did not abuse its discretion in declining to give this instruction *sua sponte*. There was no plain error here.

## V. FIREARMS DEMONSTRATION

¶ 19 During the first stage of trial, the State conducted a firearms demonstration in which the jury was transported to an Oklahoma City Police Department firing range and an investigator for the Oklahoma County District Attorney's Office, Gary Eastridge, demonstrated the use of an AK-style semi-automatic weapon. Defense counsel objected to this demonstration and his objection

was overruled.[6] Appellant complains in his fourth proposition that this ruling was in error. Again, the admissibility of evidence is within the discretion of the trial court, which will not be disturbed absent a clear showing of abuse, accompanied by prejudice to the accused. *Jackson*, 2006 OK CR 45, ¶ 48, 146 P.3d at 1165.

¶ 20 Because the weapon used in the shooting was never recovered, it is not known whether it was a fully automatic or a semi-automatic firearm. Appellant contends that the demonstration of a semi-automatic weapon mislead the jury to believe that he had used this type of weapon in the shooting and bolstered the State's assertion that he shot with the intent to kill as he would have had to purposefully pull the trigger of a semi-automatic weapon many times to discharge as many bullets as were reported to have been fired. Thus, he argues, this demonstration was misleading and prejudicial.

¶ 21 The investigator who performed the demonstration testified that when an AK–47 fully automatic rifle is used, a single pull of the trigger will fire the weapon until the trigger is released. He testified that when a semi-automatic weapon is used, each pull of the trigger fires a single shot. He demonstrated a quick, repeated firing of a semi-automatic assault rifle. The testimony and demonstration showed the jury that either weapon could have been used by Appellant. Neither the investigator's testimony nor his demonstration misled the jury to believe that Appellant used a semi-automatic rather than a fully-automatic weapon. The demonstration which showed that a semi-automatic weapon could have been used was relevant and its probative value was not substantially outweighed by the danger of unfair prejudice. 12 O.S.2001, §§ 2401, 2403. The trial court did not abuse its discretion in overruling Appellant's objection to the demonstration.

## VI. HEARSAY AND CONFRONTATION

■ ¶ 22 During the second stage of trial, Roy Collins, a man who had shared a cell with Appellant in the Oklahoma County Jail, testified for the State. During direct examination of this witness, the prosecutor introduced into evidence, and asked Collins to read to the jury, five letters that he had written to the police and the prosecutor's office revealing admissions Appellant had made to him in jail. These letters were read and admitted without objection from defense counsel. In his fifth proposition, Appellant contends that the admission of the letters into evidence and the reading of them to the jury was error. As there was no objection at trial, we review only for plain error on appeal. *Jones v. State*, 2009 OK CR 1, ¶ 52, 201 P.3d 869, 884.

¶ 23 Appellant first complains in this proposition that the letters were inadmissible hearsay. Appellant is correct. The letters were hearsay for which no exception applied. *See Malone v. State*, 2007 OK CR 34, ¶ 58, 168 P.3d 185, 210; 12 O.S.2001, § 2801. However, the record reveals that Collins' testimony prior to the introduction of the letters provided the jury substantially the same information as was contained within the letters. Collins testified that Appellant had confessed to committing the crime, had shown no remorse for his actions and had even laughed about the crime and wanted to kill and threaten potential witnesses. Thus, while the letters were inadmissible hearsay, the information contained therein was cumulative to properly admitted evidence. In light of Collins' admissible testimony, we find that the introduction of this inadmissible hearsay was harmless error.

■ ¶ 24 Appellant also argues in this proposition that the letters were testimonial in nature and therefore, their admission violated his Sixth Amendment right to confrontation. Under *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004), a testimonial out-of-court statement offered against an accused to establish the truth of the matter asserted may be admitted only where the declarant is unavailable and where the accused has had a prior

---

**6.** The record is clear that while defense counsel objected to the demonstration, he did not object to the investigator's testimony.

opportunity to cross-examine the witness. *Crawford* states, however, that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id.* at 59 n. 9, 124 S.Ct. at 1369 n. 9, *citing California v. Green,* 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). *See also Stouffer v. State,* 2006 OK CR 46, ¶ 70, 147 P.3d 245, 264. The letters did not pose a Confrontation Clause problem as Collins testified at trial and was subject to cross-examination.

## VII. PROSECUTORIAL MISCONDUCT

 ¶ 25 In Proposition VI, Appellant complains that prosecutorial misconduct deprived him of his right to a fair trial. "This Court will not grant relief based on prosecutorial misconduct unless the State's argument is so flagrant and that it so infected the defendant's trial that it was rendered fundamentally unfair." *Williams v. State,* 2008 OK CR 19, ¶ 124, 188 P.3d 208, 230. The Appellant concedes that all but one of the comments complained of were not met with objection at trial. We review the comments not objected to for plain error only. *Matthews v. State,* 2002 OK CR 16, ¶ 38, 45 P.3d 907, 920.

¶ 26 The alleged instances of misconduct include allegations that the prosecutor argued facts not in evidence, engaged in unnecessary ridicule of Appellant, contrasted Appellant's situation with that of the victims', appealed to justice and sympathy for the victims and their families and improperly shifted the burden of proof. Many of these comments, including the single comment met with objection, fell within the broad parameters of effective advocacy and do not constitute error. *Martinez v. State,* 1999 OK CR 33, ¶ 44, 984 P.2d 813, 825. We review those comments bordering upon impropriety within the context of the entire trial, considering not only the propriety of the prosecutor's actions, but also the strength of the evidence against the defendant and the corresponding arguments of defense counsel. *DeRosa v. State,* 2004 OK CR 19, ¶ 53, 89 P.3d 1124, 1145. Given the magnitude of the State's evidence against Appellant this Court finds that any

inappropriate comments not objected to did not deprive Appellant of a fair trial or affect the jury's finding of guilt or assessment of punishment. There was no plain error here.

## VIII. VOLUNTARY INTOXICATION

 ¶ 27 In his seventh proposition, Appellant complains that he was denied his right to a fair trial because the jury instructions and the prosecutor's arguments on voluntary intoxication did not state the applicable law. Regarding the jury instructions, this Court has held that, "[j]ury instructions are a matter committed to the sound discretion of the trial court whose judgment will not be disturbed as long as the instructions, taken as a whole, fairly and accurately state the applicable law." *Dill v. State,* 2005 OK CR 20, ¶ 11, 122 P.3d 866, 869. Further, where, as here, the instructions were not met with objection by the defense, all but plain error will be deemed waived. *Watts v. State,* 2008 OK CR 27, ¶ 9, 194 P.3d 133, 136–37.

 ¶ 28 "A defense of voluntary intoxication requires that a defendant, first, be intoxicated and, second, be so utterly intoxicated, that his mental powers are overcome, rendering it impossible for a defendant to form the specific criminal intent ... element of the crime." *McElmurry v. State,* 2002 OK CR 40, ¶ 72, 60 P.3d 4, 23, *quoting Jackson v. State,* 1998 OK CR 39, ¶ 67, 964 P.2d 875, 892. When the crime is that of First Degree Malice Murder, the specific intent is malice aforethought, or the intent to kill. 21 O.S. 2001, § 701.7(A). Appellant argues that the jury instructions on voluntary intoxication given in the present case were erroneous because the instruction defining the intent element of the defense contained an erroneous legal standard. The instruction, he complains, referred generally to "a criminal intent" and did not advise the jury of the specific intent element of the crime of First Degree Murder. Thus, he complains, the instructions led the jury to believe that Appellant could not be entitled to the defense of voluntary intoxication if he could have formed any criminal intent—either general or specific.

¶ 29 The record reflects that the instruction at issue, based upon Oklahoma Uniform Jury Instruction 8–39, was given as follows: *Incapable Of Forming Specific Criminal Intent*—The state in which one's mental powers have been overcome through intoxication, rendering it impossible to form a criminal intent.

While it is true that this instruction utilized the "criminal intent" language, we find that it did not render the instructions, as a whole, inaccurate or inadequate. Appellant's jury was advised, in Instruction 31, that malice aforethought was the proper intent to apply to the voluntary intoxication defense:

The crimes in Counts 1 and 2 of Murder In The First Degree have as an element the specific criminal intent Malice Aforethought. A person in [sic] entitled to the defense of voluntary intoxication if that person was incapable of forming the specific criminal intent because of his intoxication.

This is the same instruction that this court recently reaffirmed as proper and legally sufficient in *Malone*, 2007 OK CR 34, ¶ 30, 168 P.3d at 198. Appellant's jury was adequately advised that malice aforethought was the proper intent to apply to the voluntary intoxication defense.

¶ 30 Appellant argues in conjunction with this claim, that the prosecutor's closing argument to the jury referenced the incorrect law on the defense of voluntary intoxication and this argument, coupled with the jury instructions on voluntary intoxication, created plain error which requires reversal. Notably, none of the argument complained of was met with objection at trial. Accordingly, all but plain error has been waived. *Howell v. State*, 2006 OK CR 28, ¶ 11, 138 P.3d 549, 556.

¶ 31 Appellant complains specifically that the prosecutor told the jury that they had to find Appellant's actions rendered it impossible for him to form "a criminal intent" without referencing the specific intent of malice aforethought or intent to kill. The record reveals that when addressing the defense of voluntary intoxication, the prosecutor sometimes referred generally to "criminal intent." However, the record also reveals that the

prosecutor argued to the jury, in the context of the voluntary intoxication defense, that the evidence show that Appellant had the specific "intent to kill" when he committed the crime.

¶ 32 Because the jury instructions, when taken as a whole, adequately stated the applicable law on the defense of voluntary intoxication and because the prosecutor's arguments were largely correct and proper statements of the law, we find no plain error here. Appellant's argument warrants no relief.

## IX. OPINION TESTIMONY

¶ 33 Oklahoma City Police Detective John George testified for the State in both stages of Appellant's trial. Appellant argues in his eighth proposition that Detective George gave improper opinion testimony that invaded the province of the jury and improperly vouched for the credibility of State's witnesses. The trial court's decision regarding the admission of evidence is reviewed for an abuse of discretion and will not be reversed absent a clear abuse of discretion. *Hancock v. State*, 2007 OK CR 9, ¶ 72, 155 P.3d 796, 813. However, as Appellant concedes, most evidence at issue in this proposition was not met with objection by defense counsel and therefore, as to this testimony, all but plain error has been waived. *Id.*

¶ 34 The record reflects that on direct examination, Detective George testified about his interview with Appellant at the police station after the shooting. He testified that in his experience as a police officer, it was not odd for suspects to deny involvement in the commission of a crime as "[p]eople don't want to tend to confess to a homicide." He also agreed that it was not odd for suspects to tell circumstances surrounding the crime but omit the facts of the actual crime. He stated, "I believe he told us parts that he thought we knew, like the fight at the club and everything, but left out obviously the parts about the shooting, the stuff he didn't think we knew." Appellant argues that testimony that Appellant was being untruthful was improper as it was tantamount to giving an opinion that Appellant was guilty. We disagree. It is well settled that

"[p]olice officers are allowed to give opinion testimony based on their training and experience." *Andrew v. State*, 2007 OK CR 23, ¶ 80, 164 P.3d 176, 196, *citing Berry v. State*, 1988 OK CR 83, ¶ 6, 753 P.2d 926, 929–30; *McCoy v. State*, 1985 OK CR 49, ¶ 14, 699 P.2d 663, 665–66. We find that this testimony was admissible as it was properly based on Detective George's perceptions in conjunction with his training and experience. Further, despite Appellant's argument to the contrary, we find that this testimony, which did not purport to be scientific in nature, was not subject to the requirements of *Daubert.*[7] *See Malone*, 2007 OK CR 34, ¶ 82 n. 153, 168 P.3d at 217 n. 153.

 ¶ 35 Appellant next complains that Detective George improperly vouched for the credibility of other State's witnesses. George testified that initially, Appellant's statement was consistent with the statements given by co-defendants Dalton and Robertson and all of them originally omitted the part of the evening involving the shooting and the type of car they were driving that night. George then testified, "They told us the same stories before and after, as we just heard, and then they filled in the middle once they [Dalton and Robertson] decided to cooperate and tell us the truth." Appellant also complains that Detective George improperly vouched for the credibility of State's witness Roy Collins. During the second stage of trial, Detective George testified that Roy Collins had given the police details about the case that the police did not know prior to interviewing him.

 ¶ 36 Evidence is impermissible vouching only if the jury could reasonably believe that a witness is indicating a personal belief in another witness's credibility, "either through explicit personal assurances of the witness's veracity or by implicitly indicating that information not presented to the jury supports the witness's testimony." *Warner v. State*, 2006 OK CR 40, ¶ 24, 144 P.3d 838, 860. In the present case, Detective George neither gave explicit personal assurances of these witnesses' veracity nor did he implicitly indicate that information not presented at trial supported these witnesses' testimony. Detective George did not improperly vouch for the credibility of other witnesses and the admission of his testimony was not an abuse of discretion.

## X. PREJUDICIAL PHOTOGRAPHS

 ¶ 37 In his ninth proposition, Appellant argues for the first time on appeal that the introduction of irrelevant, inflammatory and highly prejudicial photographs of the victims and the crime scene deprived him of his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article II, §§ 7, 9 and 20 of the Oklahoma Constitution. The admission of photographs is within the trial court's discretion and will not be disturbed absent abuse of discretion. *Browning v. State*, 2006 OK CR 8, ¶ 32, 134 P.3d 816, 837. As counsel had no objection at trial, we review for plain error only. *Williams*, 2008 OK CR 19, ¶ 69, 188 P.3d at 223.

¶ 38 This Court has held that photographs may be relevant to show the nature and location of wounds, corroborate the medical examiner's testimony, or show the crime scene. *Browning*, 2006 OK CR 8, ¶ 32, 134 P.3d at 837. We have noted many times that while gruesome crimes make for gruesome crime-scene photographs, the issue is whether the probative value of the evidence is substantially outweighed by its prejudicial effect. *Pavatt v. State*, 2007 OK CR 19, ¶ 55, 159 P.3d 272, 290; 12 O.S.2001, §§ 2401–2403. The photographs at issue in the present case were relevant and their probative value was not substantially outweighed by the danger of unfair prejudice. We find no abuse of discretion in the trial court's decision to admit the photographs. Appellant was not deprived of his constitutional rights by the admission of these photographs.

## XI. VOIR DIRE

 ¶ 39 Appellant argues in his tenth proposition that he was denied his constitu-

---

7. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

tional right to an adequate voir dire and a fair and impartial jury. This Court reviews the manner and extent of a trial court's voir dire under an abuse of discretion standard. *Williams*, 2008 OK CR 19, ¶ 27, 188 P.3d at 217, *citing Littlejohn v. State*, 2004 OK CR 6, ¶ 49, 85 P.3d 287, 301.

¶ 40 The record reflects that after the trial court and both parties had completed voir dire and the panel had been passed for cause, the trial court noted on the record that defense counsel had not requested that the court voir dire the jurors on whether they would automatically impose the death penalty. The trial court noted additionally that such an inquiry would have been required by law if a request had been made. Appellant argues that the trial court's understanding that it was not required to life qualify the jury *sua sponte* was inconsistent with Oklahoma law. He asserts that the trial court is required to life qualify the jury in all death penalty cases even absent a request to do so. Appellant's argument is not based upon statutory authority or case law, but rather rests upon the Notes on Use regarding the life qualifying question in the Oklahoma Uniform Jury Instructions. The Notes on Use advise that the life qualifying question be asked in all cases where the death penalty is being sought, not because such is mandated by law, but rather because, "the Committee believes that the interests of justice and judicial economy will be best served if the trial court asks this question." Rule 1–5 (Alternative 2) OUJI–CR(2d).[8]

¶ 41 In *Morgan v. Illinois*, 504 U.S. 719, 735–36, 112 S.Ct. 2222, 2233, 119 L.Ed.2d 492 (1992), the United States Supreme Court held that a capital defendant must be permitted on voir dire to find out whether prospective jurors believe that the death penalty should automatically be imposed upon conviction for first degree murder. The Supreme Court ruled that upon request, either defense counsel or the trial court must ask prospective jurors whether they would automatically

impose a sentence of death. *Morgan*, 504 U.S. at 729, 112 S.Ct. at 2229. This Court has adhered to and followed this ruling numerous times.[9] However, neither the United States Supreme Court nor this Court has held that the trial court is required to ask life qualifying questions to the jury absent a request to do so. Absent legal authority to the contrary, we cannot find that the trial court abused its discretion in declining to ask the potential jurors the life qualifying question *sua sponte*.

## XII. ESPECIALLY HEINOUS, ATROCIOUS OR CRUEL AGGRAVATING CIRCUMSTANCE

¶ 42 Appellant argues in his eleventh proposition that the evidence was insufficient to establish beyond a reasonable doubt the especially heinous, atrocious or cruel aggravating circumstance as to the murders of both Palmer and Jones. To prove that a murder is especially heinous, atrocious or cruel, the evidence must show that the victim's death was preceded by torture or serious physical abuse. *Hogan v. State*, 2006 OK CR 19, ¶ 66, 139 P.3d 907, 931. Serious physical abuse is proved by showing that the victim endured conscious physical suffering before dying. *Id.* "When the sufficiency of the evidence of an aggravating circumstance is challenged on appeal, this Court reviews the evidence in the light most favorable to the State to determine if any rational trier of fact could have found the aggravating circumstance beyond a reasonable doubt." *Washington v. State*, 1999 OK CR 22, ¶ 44, 989 P.2d 960, 974.

¶ 43 With regard to the murder of Glen Palmer, the evidence showed that Palmer was shot four times. He suffered a grazing gunshot wound to the right shoulder, two superficial gunshot wounds to the left side of his back, and an ultimately fatal gunshot wound to his chest. Although he was initially conscious after being shot, his breathing

8. We certainly agree with the Committee that it is always prudent to ask this question when the death penalty is sought, and we strongly encourage trial courts to do so.

9. *See Hanson v. State*, 2003 OK CR 12, ¶ 6, 72 P.3d 40, 46–47; *McCarty v. State*, 1998 OK CR 61, ¶ 77, 977 P.2d 1116, 1135; *Fitzgerald v. State*, 1998 OK CR 68, ¶ 31, 972 P.2d 1157, 1170–71; *Cannon v. State*, 1998 OK CR 28, ¶¶ 4–7, 961 P.2d 838, 844.

became labored and he made gurgling sounds as his chest filled with blood before he died. There was testimony that immediately after he had been shot, Palmer was able to speak, was aware that he had been shot and was fearful that the shooters would return. Reviewing the evidence in the light most favorable to the State, we find that the evidence supports a finding that Palmer's death was preceded by physical suffering and mental cruelty. *Jones,* 2009 OK CR 1, ¶¶ 77–79, 201 P.3d at 889.

 ¶ 44 With regard to the murder of Anthony Jones, the evidence showed that his death was nearly immediate. Jones suffered numerous gunshot wounds including wounds to his head and chest. The Medical Examiner testified that Jones injuries were not survivable and he likely died within seconds after being shot. Johnson testified that Jones was not conscious after being shot and Johnson could not detect a pulse when he checked Jones. The evidence does not show, beyond a reasonable doubt and in a light most favorable to the State, that Jones' death was preceded by torture or that he endured conscious physical suffering before dying. Accordingly, Appellant's argument that the especially heinous, atrocious or cruel aggravating circumstance must be stricken with regard to the murder of Anthony Jones is well taken and we so hold.[10]

 ¶ 45 We must now consider what relief, if any, is required. "An invalidated sentencing factor ... will render the sentence unconstitutional by reason of its adding an improper element to the aggravation scale in the weighing process *unless* one of the other sentencing factors enables the sentencer to give aggravating weight to the same facts and circumstances." *Brown v. Sand-*

ers, 546 U.S. 212, 220, 126 S.Ct. 884, 892, 163 L.Ed.2d 723 (2006). "If the jury could have properly considered the evidence used to support the invalidated aggravator anyway because it also supported a separate and valid aggravator, the death sentence will stand." *Jackson,* 2006 OK CR 45, ¶ 44, 146 P.3d at 1164. Under such circumstances, the jury has not considered any improper evidence and has not weighed any improper aggravating evidence against the mitigating evidence in arriving at its sentence. *Id.* Since there was really no evidence presented to the jury in support of the especially heinous, atrocious or cruel aggravating circumstance with regard to the murder of Anthony Jones, we find that Appellant's jury did not consider improper aggravating evidence in deciding punishment. Thus, the jury's weighing process of mitigating evidence against aggravating circumstances was not skewed. *See Jackson,* 2006 OK CR 45, ¶ 45, 146 P.3d at 1164. This claim is rejected.

## XIII. MITIGATING EVIDENCE INSTRUCTION

 ¶ 46 In his twelfth proposition, Appellant argues that the definition of mitigating circumstances given to the jury in this case was unconstitutional as it impermissibly limited the jury's consideration of mitigating evidence. This Court has consistently upheld constitutional challenges to the instruction at issue.[11] However, as Appellant correctly asserts, in *Harris v. State,* 2007 OK CR 28, ¶¶ 24–28, 164 P.3d 1103, 1113–14, this Court recognized that while the instruction on mitigating evidence did not unconstitutionally limit the evidence the jury could consider as mitigating, it was subject to misuse by prosecutors in closing argument.[12]

---

10. The State makes no argument to the contrary, noting, along with Appellant, that the record indicates that the heinous, atrocious or cruel aggravating circumstance was intended to only be alleged with regard to Palmer's murder. The 2nd Amended More Definite and Certain Statement to Support Allegations Contained in the Bill of Particulars In Re: Punishment explains how this aggravating circumstance applies to Palmer's murder and makes no mention of Jones. That the jury was erroneously instructed on this aggravating circumstance with regard to Jones' murder was brought to the trial court's attention at formal sentencing by the prosecutor

who opined that it would be stricken on appeal. Defense counsel did not disagree and the trial court acknowledged the error, dismissing it as a scrivener's error.

11. *See Malone,* 2007 OK CR 34, ¶ 87, 168 P.3d at 219; *Primeaux v. State,* 2004 OK CR 16, ¶ 90–96, 88 P.3d 893, 909–10; *Williams v. State,* 2001 OK CR 9, ¶ 109, 22 P.3d 702, 727.

12. This Court referred the matter to the Oklahoma Uniform Jury Instruction Committee (Criminal) for an amendment to remedy the

This is what Appellant argues happened in the present case. However, as the record reflects no objection to the alleged offending argument, this Court will review only for plain error on appeal. *Jones*, 2009 OK CR 1, ¶ 76, 201 P.3d at 888. A review of the prosecutor's closing argument concerning the mitigating evidence instruction, the mitigating evidence itself and all instructions concerning mitigating evidence given in this case supports our conclusion that the jurors' consideration of the evidence offered in mitigation was not unfairly limited in this case.

## XIV. INEFFECTIVE ASSISTANCE OF COUNSEL

¶ 47 In his thirteenth proposition, Appellant argues that he was denied his Sixth Amendment right to the effective assistance of counsel for several alleged failings of his trial attorney. This Court reviews claims of ineffective assistance of counsel under the two-part *Strickland* test that requires an appellant to show: (1) that counsel's performance was constitutionally deficient; and (2) that counsel's performance prejudiced the defense, depriving the appellant of a fair trial with a reliable result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Davis v. State*, 2005 OK CR 21, ¶ 7, 123 P.3d 243, 246. It is not enough to show that counsel's failure had some conceivable effect on the outcome of the proceeding. Rather, an appellant must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Head v. State*, 2006 OK CR 44, ¶ 23, 146 P.3d 1141, 1148. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

¶ 48 In support of his proposition, Appellant first argues that trial counsel was ineffective for failing to object to the introduction of inadmissible evidence, improper tactics and argument of the prosecutors, the trial court's rulings precluding the admission of defense evidence and the submission of improper jury instructions and verdict forms. These alleged failings concern issues raised and addressed above. We found in Proposi-

tion I, that the evidence of Appellant's PTSD was inadmissible in first stage of trial and properly precluded. We found in Proposition III that an instruction on Second Degree Depraved Mind Murder was not warranted by the evidence. In Proposition V, we found that while the letters at issue were in fact hearsay for which no exception applied, the information contained within them was cumulative to properly admitted evidence and thus, their admission was harmless. In Proposition VI, we found that none of the alleged improper comments made by the prosecutor could be found to have affected the jury's finding of guilt or assessment of punishment. We found in Proposition VII, that the jury instructions, when taken as a whole, adequately stated the applicable law on the defense of voluntary intoxication and the prosecutor's arguments were largely correct and proper statements of the law. In Proposition VIII, we found that Detective George did not give improper opinion testimony or improperly vouch for the credibility of other witnesses. In Proposition XI, we found that the heinous, atrocious or cruel aggravating circumstance was proven beyond a reasonable doubt as to the murder of Glen Palmer. Although this aggravating circumstance was stricken as to the murder of Anthony Jones, Appellant's jury did not consider improper aggravating evidence in deciding punishment. In Proposition XII, we found that the jurors' consideration of the evidence offered in mitigation in this case was not unfairly limited. Most of these alleged failings do not reflect a deficient performance by defense counsel and Appellant has not shown a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different.

¶ 49 Next, Appellant complains that defense counsel was ineffective for failing to adequately investigate and present additional evidence of innocence. He first specifically complains that counsel was ineffective for failing to investigate and present additional mitigating evidence. While Appellant has shown this Court that additional mitigation

problem. *Harris*, 2007 OK CR 28, ¶¶ 26–27, 164 P.3d at 1114.

witnesses could have been called and others that were called could have given additional testimony, he has not shown a reasonable probability that, but for counsel's alleged unprofessional error in not presenting this evidence, the result of the proceeding would have been different.

¶ 50 The next allegation of ineffective assistance of counsel concerns a concession made by defense counsel in opening statements. The record reflects that during opening statements, defense counsel conceded that Appellant was the shooter in the homicides. This concession was apparently made, with the consent of Appellant, in order to remain consistent with the intended defense built around Appellant's claim of PTSD. After defense counsel told the jury that Appellant was the shooter, he also told them that because of this concession, he would have a hard time asking them to find Appellant not guilty and would turn, at some point, to the second stage of trial. This second comment, Appellant argues, was tantamount to a complete concession of guilt and was not made with Appellant's knowing and intelligent consent. We disagree. With this comment, defense counsel did not concede that Appellant was guilty of First Degree Murder. Rather, when the whole of the comments are taken together, it is clear that defense counsel, in accord with his claim that Appellant suffered from PTSD, conceded that his client would be guilty of a lesser form of homicide. The concession made by defense counsel with the consent of Appellant cannot be found to constitute ineffective assistance of counsel.

¶ 51 Next Appellant argues that trial counsel was ineffective for failing to call a witness to impeach Collins' credibility by testifying that Collins was an opportunist who would lie and perjure himself in order to get a better deal for himself. This information was basically revealed at trial through both direct and cross-examination of Collins. While defense counsel certainly could have called this witness, Appellant has not shown a reasonable probability that, but for counsel's alleged unprofessional error in not doing so, the result of the proceeding would have been different.

¶ 52 Finally, Appellant contends that the defense investigator who was assigned to work on his case had previously worked on co-defendant Dalton's case and therefore, had a conflict of interest. It is not clear how the investigator's alleged conflict of interest rendered trial counsel's performance deficient. The investigator's affidavit submitted in support of the Motion for an Evidentiary Hearing sheds no light on this. The investigator stated in his affidavit that he worked on gathering records for Dalton to use for mitigation and the memorandums he prepared for Dalton's case were turned over to Appellant's attorneys in this case. He also stated that he did the best that he could for Appellant and did not feel like the work he did on Appellant's case was compromised by his work on Dalton's case. Appellant has neither shown that counsel were deficient with regard to their use of the investigator nor that any alleged deficiency prejudiced the defense, depriving Appellant of a fair trial with a reliable result. Appellant has not shown that he was denied his constitutional right to the effective assistance of counsel.

¶ 53 In conjunction with this claim, Appellant has filed a Rule 3.11 motion for an evidentiary hearing on the issue of ineffective assistance of counsel asserting that counsel was ineffective for failing to adequately investigate and identify evidence which could have been made available during the trial. Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2007). In accordance with the rules of this Court, Appellant has properly submitted with his motion affidavits supporting his allegations of ineffective assistance of counsel. Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2007). As the rules specifically allow Appellant to predicate his claim on allegations "arising from the record or outside the record or a combination of both," *id.*, it is, of course, incumbent upon this Court, to thoroughly review and consider Appellant's application and affidavits along with other attached non-record evidence to determine the merits of Appellant's ineffective assistance of counsel claim. Our rules require us to do so

in order to evaluate whether Appellant has provided sufficient information to show this Court by clear and convincing evidence that there is a strong possibility trial counsel was ineffective for failing to utilize or identify the evidence at issue. Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2007). This standard is intended to be less demanding than the test imposed by *Strickland* and we believe that this intent is realized. Indeed, it is less of a burden to show, even by clear and convincing evidence, merely a *strong possibility* that counsel was ineffective than to show, by a preponderance of the evidence that counsel's performance actually was deficient and that but for the unprofessional errors, the result of the proceeding would have been different as is required by *Strickland.* Thus, when we review and grant a request for an evidentiary hearing on a claim of ineffective assistance under the standard set forth in Rule 3.11, we do not make the adjudication that defense counsel actually was ineffective. We merely find that Appellant has shown a strong possibility that counsel was ineffective and should be afforded further opportunity to present evidence in support of his claim. However, when we review and deny a request for an evidentiary hearing on a claim of ineffective assistance under the standard set forth in Rule 3.11, we necessarily make the adjudication that Appellant has not shown defense counsel to be ineffective under the more rigorous federal standard set forth in *Strickland.*

¶ 54 In the present case, Appellant specifically asserts in his application for an evidentiary hearing on his claim of ineffective assistance of counsel that defense counsel was ineffective for failing to investigate and present (1) additional mitigating evidence that Appellant endured a miserable life of poverty and parental neglect during his childhood and adolescence; (2) new evidence showing that trial counsel did not obtain Appellant's knowing and intelligent consent or acquiescence to counsel's concession that Appellant was the shooter and that counsel could not ask the jury to render a not guilty verdict; (3) additional evidence from a witness available to trial counsel but not called at trial showing that State's witness Roy Collins had admitted to him that he was going to 'snitch on' Appellant to get a better deal in his own case; and (4) evidence of a defense trial investigator's conflict of interest because of a previous assignment as an investigator for a codefendant. We have thoroughly reviewed Appellant's application and affidavits along with other attached non-record evidence and we conclude that Appellant has failed to show with clear and convincing evidence a strong possibility that counsel was ineffective for failing to identify or use the evidence raised in the motion. Consequently, we also find that Appellant failed to show that counsel's performance was constitutionally deficient and that counsel's performance prejudiced the defense, depriving him of a fair trial with a reliable result. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d 674 (1984); *Davis,* 2005 OK CR 21, ¶ 7, 123 P.3d at 246. Appellant is not entitled to an evidentiary hearing on his claim of ineffective assistance of counsel.

## XV. CUMULATIVE ERROR

¶ 55 Finally, Appellant claims that trial errors, when considered cumulatively, deprived him of a fair sentencing determination. This Court has recognized that when there are "numerous irregularities during the course of [a] trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors was to deny the defendant a fair trial." *DeRosa,* 2004 OK CR 19, ¶ 100, 89 P.3d at 1157, *quoting Lewis v. State,* 1998 OK CR 24, ¶ 63, 970 P.2d 1158, 1176. Upon review of Appellant's claims for relief and the record in this case we conclude that although his trial was not error free, any errors and irregularities, even when considered in the aggregate, do not require relief because they did not render his trial fundamentally unfair, taint the jury's verdict, or render sentencing unreliable. Any errors were harmless beyond a reasonable doubt, individually and cumulatively.

## XVI. MANDATORY SENTENCE REVIEW

¶ 56 Title 21 O.S.2001, § 701.13 requires this Court to determine "[w]hether

the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; and whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance." After conducting this review, this Court may order any corrective relief that is warranted or affirm the sentence. 21 O.S.2001, § 701.13(E).

¶ 57 We have reviewed the record in this case in conjunction with Appellant's claims for relief and have found that his conviction and death sentence were not the result of the introduction of improper evidence, witness testimony, prosecutorial misconduct or trial court error. We therefore find Appellant's death sentence was not imposed because of any arbitrary factor, passion or prejudice.

¶ 58 The jury's finding that Appellant had been previously convicted of a felony involving the use or threat of violence, knowingly created a great risk of death to more than one person and that there existed a probability that he would commit criminal acts of violence that would constitute a continuing threat to society is amply supported by the evidence. Further, the jury's finding that Palmer's murder was especially heinous, atrocious, or cruel is also amply supported by the evidence. Appellant's jury did not consider any improper aggravating evidence in deciding punishment. Weighing the valid aggravating circumstances and evidence against the mitigating evidence, we find, as did the jury below, that the aggravating circumstances outweigh the mitigating circumstances. The Judgment and Sentence of the district court is **AFFIRMED.**

## DECISION

¶ 59 The Judgment and Sentence of the district court is **AFFIRMED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2010), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

A. JOHNSON, V.P.J., LUMPKIN, CHAPEL and LEWIS, JJ.: concur.