Tommy Howard GILBREATH, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-80-704.

Court of Criminal Appeals of Oklahoma.

Sept. 17, 1982.

**700**

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Jan Eric Cartwright, Atty. Gen., State of Okl. Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

The appellant, Tommy Gilbreath, was convicted of Forgery in the Second Degree in Garfield County District Court. The jury sentenced him to seven (7) years' imprisonment.

Gilbreath alleges four errors on appeal: (1) failure of the State to comply with the speedy trial provisions under the Interstate Agreement on Detainer's Act; (2) denial of a speedy trial as guaranteed by the Sixth Amendment; (3) denial of the right to self-representation; and (4) the State erroneously inquired into Gilbreath's prior convictions.

### I

The validity of Gilbreath's argument based on the State's alleged violation of the Interstate Agreement on Detainers Act (IAD) rests primarily on whether the State lodged a detainer, and if so, on what date was the detainer lodged.

The State of Oklahoma enacted the IAD in 1977, to lessen the abuses arising out of the use of detainers. The IAD was enacted due to the party states' recognition of the difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, and the *resulting uncertainties which obstruct programs of prisoner treatment and rehabilitation.* Title 22 O.S.1981, § 1347, Art. I (emphasis added).

The specific provision of the IAD at issue and pertinent to a resolution of the issues in this case is Article IV, which provides in part:

The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated.

In *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), the Supreme Court addressed the application of Article IV. The Supreme Court ruled that the application of the IAD is triggered upon the filing of a detainer by the requesting State (receiving state). In support of this conclusion, the Court persuasively quotes from both the House and Senate Reports:

The Attorney General has advised the committee that a prisoner who has had a detainer lodged against him is seriously disadvantaged by such action. He is in custody and therefore in no position to seek witnesses or to preserve his defense. He must often be kept in close custody and is ineligible for desireable work assignments. What is more, when detainers are filed against a prisoner he sometimes loses interest in institutional opportunities because he must serve his sentence without knowing what additional sentences may lie before him, or when, if ever, he will be in a position to employ the education and skills he may be developing. H.R.Rep. No. 91–1018, p.3 (1970); S.Rep.No. 91–1356, p.3 (1970), U.S.Code Cong. & Admin. News 1970, pp. 4864, 4866. *United States v. Mauro,* 436 U.S. at 353, 98 S.Ct. at 1843–44.

We find that the time limits set out in the IAD are not triggered until the requesting state (receiving state) files a detainer.[1] Under the Act a detainer is vaguely defined as a "written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated..." 22 O.S.1981,

---

1. See Annot., 98 A.L.R.3d 160 (1980).

§ 1347, Art. IV(a). A detainer is generally any written notice to prison authorities, in the sending state, advising them that charges are pending against the prisoner in another jurisdiction.

Once the State has lodged a detainer "against the prisoner, he shall be brought to trial within one hundred eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for final disposition to be made of the indictment, information or complaint..." 22 O.S.1981, § 1347, Art. III(a).

■ The record, in this case, demonstrates that the State did not violate the provisions of the Interstate Agreement on Detainers Act. The State filed a detainer with the Federal Correctional Institute in El Reno, Oklahoma, on January 16, 1980. Gilbreath was afforded a preliminary hearing on March 17, 1980, and went to trial on April 21, 1980. Therefore, the State clearly afforded Gilbreath a trial on his pending Oklahoma charges well within the 180 days from the lodging of the detainer and the appellant's written request for a speedy trial.

## II

Gilbreath further argues that he was denied a speedy trial as guaranteed in the Sixth Amendment and made applicable to the States through the Due Process Clause of the Fourteenth Amendment. *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969).

On February 2, 1979, Gilbreath filed a motion for speedy trial in Garfield County District Court. At the time the motion was filed, Gilbreath was incarcerated in Cheyenne, Wyoming for federal parole violations. Later, on April 4, 1979, Gilbreath filed a motion to quash in Garfield County District Court based upon the State's failure to afford him a speedy trial. On May 18, 1979, Garfield County District Judge, David M. Collins, denied Gilbreath's motion to quash and advised him to proceed under the Interstate Agreement on Detainers Act.

On November 2, 1979, Judge Collins signed an order for habeas corpus ad prosequendum, to deliver Gilbreath from the Federal Corrections Center, El Reno, Oklahoma to face pending criminal charges in the Garfield County District Court. For some reason not apparent from the record, the writ of habeas corpus ad prosequendum was never executed. On January 16, 1980, the State lodged a detainer with the El Reno Federal Corrections Center. Gilbreath was afforded a jury trial on April 21, 1980.

In *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971), the Supreme Court articulated the interests served by the Sixth Amendment Speedy Trial Clause. The Court asserted that the speedy trial provision is:

...an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself.

Inordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends. (citations omitted)

■ Further, in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed. 101 (1972), the Supreme Court set out several factors to be balanced when determining whether an accused has been denied his constitution-

**702**

al right to a speedy trial. These factors to be considered are: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Supra, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d 101; see also *United States v. McDonald,* —— U.S. ——, 102 S.Ct. 1497, 71 L.Ed.2d 96 (1982).

In this case, we hold that the delay did not result in a denial of Gilbreath's right to a speedy trial. Gilbreath has failed to adequately show any prejudice to his defense at trial due to the delay.

Additionally, Gilbreath was legally incarcerated during the time in which the Garfield County charges were pending. Therefore, the delay did not cause any serious inference with Gilbreath's liberty. It did not directly cause any disruption of employment, drain his financial resources or curtail his associations. Thus, under the facts of this case, we hold that the appellant was not denied a speedy trial. See *Richardson v. State,* 600 P.2d 361 (1979).

### III

The appellant next asserts that the trial court erred in refusing to allow him to represent himself at trial. The record shows that on April 18, 1980, defense counsel filed a motion to withdraw. The motion alleged that defense counsel and the appellant experienced irreconcilable differences as to the presentation of the appellant's case. The motion further requested that the appellant be able to proceed pro se at trial. The trial judge denied the motion to withdraw. Again, immediately prior to trial defense counsel requested to withdraw, but did not advise the court that the appellant wished to represent himself. Counsel's request to withdraw was denied. The record is devoid of any objection by Gilbreath to the trial judge's denial of defense counsel's motion to withdraw. There is no further record showing that the appellant wished to represent himself.

This Court in *Bowen v. State,* 606 P.2d 589, 593 (Okl.Cr.1980), held that "[d]ue to the near certain detriment to the defendant's chances of receiving a fair defense and to the administration of justice, the defendant must clearly and unequivocally assert his demand to proceed pro se: '[I]f a defendant wishes to proceed pro se it is incumbent upon him to initiate a request therefor and not a duty of the court to advise him of this right.' "

In this case, the record does not establish that Gilbreath made an unequivocal demand to represent himself at trial. The trial court was not required to advise him of the disadvantages of self-representation or inquire as to whether he voluntarily and intelligently waived his right to an attorney. The appellant waived his right to proceed pro se by his failure to make or renew his demand at trial and on the record. *Bowen,* supra at 594; see also *Stowe v. State,* 590 P.2d 679 (Okl.Cr.1979).

### IV

Gilbreath, lastly, asks this Court to find that the State improperly inquired into his prior convictions during his cross-examination. A thorough examination of the trial record convinces this Court that the appellant opened the door to the subject of his past trouble with the law. Gilbreath testified on direct examination: "The main reason I'm here today is because in my younger years I have been in a lot of trouble. I mean not a little bit but a lot of trouble. I have been convicted for forgery." Accordingly, any error was invited by defense counsel during direct examination of Gilbreath at which time he attempted to fully explain his past involvement in criminal activities. See *Hill v. State,* 589 P.2d 1073 (Okl.Cr.1979).

We find that the appellant's judgment and sentence should be AFFIRMED.

BRETT, P. J., concurs.

BUSSEY, J., *concurs in results.*