**Larry Vernon RACKLEY, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–87–791.**

Court of Criminal Appeals of Oklahoma.

July 3, 1991.

Pete Gelvin, Asst. Oklahoma County Public Defender, Oklahoma City, for appellant.

Robert H. Henry, State Atty. Gen. and Elizabeth J. Bradford, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LANE, Presiding Judge:

Appellant, Larry Vernon Rackley, was convicted of Robbery with Firearms and Possession of a Controlled Dangerous Sub-stance, both After Former Conviction of Two or More Felonies, after a trial by jury in District Court of Oklahoma County, Case No. CRF–87–472. The jury recommended that Appellant serve two hundred and fifty (250) years for Robbery with Firearms and forty (40) years for Possession of a Controlled Dangerous Substance. The trial court set the punishment accordingly and ordered that the sentences be served consecutively. Appellant has appealed from that conviction alleging that he was improperly impeached and his sentence was improperly enhanced by his previous convictions and that his conviction violated the Interstate Agreement on Detainers. We disagree and affirm the convictions.

The charges against Appellant stem from the robbery of a convenience store. At the time of his arrest for the robbery, police officers discovered a syringe containing a controlled dangerous substance in Appellant's possession. Appellant raises no allegations which require us to consider the facts and circumstances of the crimes charged in any greater detail.

▆▆▆ As his first proposition of error, Appellant urges us to find that he was improperly impeached through the use of a conviction which was voidable under *Edwards v. State*, 591 P.2d 313 (Okl.Cr.1979). In *Edwards*, this Court specifically spelled out the procedure to be followed when a defendant was attempting to avoid the enhancement of his current charges by a former conviction which occurred when a male defendant was between the ages of sixteen and eighteen[1]. We held:

> A person in such a situation must be able to state to the District Court some reason to believe that certification would have been denied if a certification hearing had been held. If he can do this, and the State cannot establish that the person *would* have been certified, then the District Court should grant the appropriate relief.

*Id.* at 322–23.

In his brief, Appellant points out only the State's burden, claiming that it was not

---

1. This is different from the steps which must be taken if the defendant is seeking to void the original conviction altogether. Relief in this manner must be undertaken through post conviction remedies in the district court where the sentence was pronounced.

met, failing to recognize that the State has no burden at all until after the issue is raised by a defendant and a reason is presented as to why certification would not have been granted. On the record before us, we do not find any objection to the admission of the conviction for impeachment purposes on the grounds that Appellant would not have been certified as an adult had the procedure been undertaken. There was some discussion as to whether the conviction has been contested in any manner which would raise this very issue, however, no attempt was made by Appellant to prove that the certification would have been denied. After the trial court held that the conviction would be admissible because it had never been collaterally attacked, no further discussion was held.

We find that Appellant properly raised the issue and then did nothing to urge his position that the conviction was not admissible since he would not have been certified. He had the opportunity for a full hearing on the issue had he chosen to press the matter. He did not and we will not now undertake the task of determining the resolution of the matter on appeal. The facts should have been explored at trial leaving us to review only any adverse finding by the trial court. We will not step into the proceedings as fact finders at this point. We do not find that reversible error has occurred.

█ Although his next proposition is phrased in terms of excessive punishment, Appellant essentially challenges the use by the State of his eight prior convictions in order to obtain an enhanced punishment under the provisions of 21 O.S.1981, § 51. No objections to the convictions were raised at trial. On appeal, Appellant seeks to prove that several of the convictions arose out of the same transactions. We have steadfastly held that "when the State makes a prima facie showing of prior convictions, the defendant has the burden of showing the defects in that judgment and sentence." *Rosteck v. State*, 749 P.2d 556, 558 (Okl.Cr.1988). In this case, Appellant failed to allege at trial that there was any defect in the prior proceedings against him.

Pointing out on appeal that the charges are similar, that pleas to the crimes were entered on the same day or that the case numbers are consecutive is not sufficient proof that the convictions were related. *Hammer v. State*, 760 P.2d 200 (Okl.Cr. 1989); *Shepard v. State*, 756 P.2d 597 (Okl. Cr.1988). The record before us indicates that Appellant failed to meet his burden of proof, thus no relief is warranted. *Brigman v. State*, 761 P.2d 898 (Okl.Cr.1988).

█ While we agree that Appellant's sentence is severe, it is not outside the statutory range. To be considered error, the sentence must be so greatly disproportionate that it shocks the conscience of the court. *Virgin v. State*, 792 P.2d 1186, 1188 (Okl.Cr.1990). We have long held:

The question of excessiveness of punishment is to be determined by the facts and circumstances of each particular case, and unless the sentence is so excessive that it shocks the conscience of the Court, we will not modify a sentence.

*Spencer v. State*, 795 P.2d 1075 (Okl.Cr. 1990); *Dunagan v. State*, 755 P.2d 102 (Okl.Cr.1988); *Collins v. State*, 751 P.2d 200, 202 (Okl.Cr.1988). There is nothing present on the face of this record which would indicate any reason for us to substitute our judgment for that of the jury's. Accordingly, we will not modify the sentence.

█ As his final assignment of error, Appellant claims that his conviction was obtained in violation of the Interstate Agreement on Detainers Act (IAD), codified in Oklahoma at 22 O.S.1981, §§ 1345– 1349. The facts behind this allegation are not clear from either the record before us or from the briefs. Apparently, sometime after the crimes in the present case were committed, but before the trial on the charges, Appellant was placed into federal custody. As a result, the State obtained Appellant's presence for purposes of preliminary examination and trial by filing two "Writs of Habeas Corpus Ad Prosequendum" requesting that Appellant be transported from the federal penitentiary in El Reno to the Oklahoma County District Court. Appellant claims that after he was

returned to federal custody following the preliminary examination without having been tried on the state charges, the State lost its ability to proceed.

We disagree with Appellant's analysis. In the first place, Appellant has not established that the present prosecution was based on a detainer, triggering the IAD. The record further fails to show that if a detainer was on file, that Appellant gave notice or made a demand for trial as required by Section 1347, art. III(a). Such notice and demand is mandatory to invoke the agreement provisions requiring the trial to commence before the prisoner's return to the original place of confinement. Section 1347, art. III(d).

Even assuming that there was a proper detainer, the IAD provides that it only applies in courts where detainers are *pending* and that the remedy for violation is dismissal of an indictment, information or complaint upon which no trial has been had. Clearly, the terms of the IAD limit it to incomplete prosecutions, where the trial is still "pending." When Appellant proceeded to trial on the current charges without challenging his transfer from federal to state custody, he waived any rights granted to him under the IAD, if in fact he had any at all. The cases cited by Appellant confirm this result in that the dismissals in those cases all occurred prior to a trial on the merits of the charges. We find no reason that the instant convictions should be reversed based on the IAD.

After review of the errors alleged by Appellant, we are unable to conclude that any error has occurred which requires either reversal or modification of Appellant's sentence. Accordingly, the judgment and sentence is AFFIRMED.

LUMPKIN, V.P.J., specially concurs and files opinion.

BRETT and JOHNSON, JJ., concur.

PARKS, J., concurs in result and files opinion.

PARKS, Judge, concurring in result:

While I agree that appellant's conviction was not obtained in violation of the Inter-state Agreement on Detainers Act, I cannot concur in the majority's analysis concerning this issue. The majority bases its holding, at least in part, upon the fact that the record fails to show "Appellant gave notice or made a demand for trial as required by Section 1347, art. III(a)." Majority at 1051. However, Article III is applicable only where the prisoner makes the request for final disposition of the indictment, information or complaint. Conversely, Article IV applies where the receiving state makes a request to obtain the prisoner for trial. In the present case, the State made the request, via two writs of habeas corpus ad prosequendum, for appellant to be delivered to face the charges at issue. Therefore, Article IV, which does not require a prisoner to give notice and make a demand for trial, would be applicable if this case fell under the IAD.

However, as the majority recognizes, there is nothing in the present record to indicate that a detainer was ever filed. A detainer must be filed before the IAD is triggered and the State bound by its provisions. *See* Article III(a), Article IV(a). *See also United States v. Mauro*, 436 U.S. 340, 361, 98 S.Ct. 1834, 1848, 56 L.Ed.2d 329 (1978). In *Gilbreath v. State*, 651 P.2d 699, 700–701 (Okl.Cr.1982), this Court held:

> Under the Act a detainer is vaguely defined as a "written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated ..." 22 O.S. 1981, § 1347, Art. IV(a). A detainer is generally any written notice to prison authorities, in the sending state, advising them that charges are pending against the prisoner in another jurisdiction.

While I agree with the later statement, I find that the former statement was a misinterpretation of the Act.

In analyzing the federal counterpart to Oklahoma's IAD, the Supreme Court defined a detainer as "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent."

*Carchman v. Nash,* 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985). As set forth above, a detainer must be filed before the provisions of the IAD are triggered. Then, either the receiving state files a written request for temporary custody or availability, *see* Article IV(a), or the prisoner files written notice and a request for trial, *see* Article III(a). Thus, it is readily apparent that two different documents were contemplated by the drafters of the IAD. *See Mauro,* 436 U.S. at 360, 98 S.Ct. at 1847. The first document *advises* authorities of the sending state that charges are pending against the prisoner in another jurisdiction and the second document is either a *request* for temporary custody or availability of the prisoner filed by the State, or *notice and a request* for trial filed by the prisoner. Accordingly, I would overrule *Gilbreath* insofar as the definition of "detainer" announced therein is inconsistent with this discussion.

It should further be noted that the two writs of habeas corpus ad prosequendum filed in this case did not substitute as a "detainer" within the meaning of the IAD. *Mauro,* 436 U.S. at 360–61, 98 S.Ct. at 1847–48. Because the instant record does not indicate that a detainer was ever filed, this case falls outside of the scope of the IAD. Therefore, I agree that appellant's conviction should be affirmed.

LUMPKIN, Vice Presiding Judge, specially concurring:

I concur in the Court's determination in this case. The United States Supreme Court held in *U.S. v. Mauro,* 436 U.S. 340, 349, 98 S.Ct. 1834, 1841, 56 L.Ed.2d 329, 347 (1978), that a writ of habeas corpus and prosequendum is not a detainer within the meaning of the Interstate Agreement on Detainers Act, and thus, does not trigger the application of its provisions.