2016 OK CR 30

**Hillard A. FULGHAM, II, Appellant,**

**v.**

**STATE of Oklahoma, Appellee.**

**Case Number: F–2015–455**

Court of Criminal Appeals of Oklahoma.

Decided: 12/22/2016

**85.** *Fent v. Contingency Review Bd.*, 2007 OK 27, ¶ 18, 163 P.3d 512, 523.

APPEARANCES AT TRIAL, KYLE H.B. KILLAM, 2017 SOUTH ELM PLACE, STE 108, BROKEN ARROW, OK 74012, COUNSEL FOR DEFENDANT

ERIK GRAYLESS, AMANDA SELF, ASSISTANT DISTRICT ATTORNEYS, DISTRICT ATTORNEY'S OFFICE, 500 SOUTH DENVER, STE 900, TULSA, OK 74103, COUNSEL FOR THE STATE

APPEARANCES ON APPEAL, WAYNA TYNER, OKLAHOMA INDIGENT DEFENSE, P.O. BOX 926, NORMAN, OK 73070, COUNSEL FOR APPELLANT

E. SCOTT PRUITT, OKLAHOMA ATTORNEY GENERAL, JENNIFER B. MILLER, ASSISTANT ATTORNEY GENERAL, 313 N.E. 21ST STREET, OKLAHOMA CITY, OK 73105, COUNSEL FOR APPELLEE

## OPINION

HUDSON, JUDGE:

¶1 Appellant Hillard A. Fulgham, II was tried by a jury in the District Court of Tulsa County, Case No. CF–2013–2986, and convicted of two counts of Murder in the First Degree in violation of 21 O.S.Supp.2004, § 701.7.[1] The jury recommended Fulgham be sentenced to life imprisonment without the possibility of parole on both counts. The Honorable Doug Drummond, District Judge, sentenced Fulgham in accordance with the jury's verdicts and ordered the sentences be run consecutively. From these Judgments and Sentences, Fulgham now appeals. We **AFFIRM.**

## BACKGROUND

¶2 On January 4, 2006, police found Dorothy Lindley and Linda Wright stabbed to death in Ms. Lindley's apartment at the Warwick Apartments in Tulsa. Ms. Lindley was found lying on her bed while Ms. Wright was found lying on the bedroom floor. Evidence at the scene indicated that the struggle between the victims and their assailant was limited to this bedroom. Ms. Lindley's apartment was located on the second floor. Ms. Lindley's bedroom window was broken and the screen had been pulled out. Blood was found on the bottom ledge of the windowsill. Blood was also found in the kitchen on the tile floor and counter-top; in the bathroom on the floor; and on a toilet paper roll.

¶3 While the police investigated various potential suspects, their investigation turned up nothing concrete and the case grew cold until a hit through the Combined DNA Indexing System (CODIS)—a national DNA database—on May 1, 2009. A DNA match was found between Appellant's DNA profile and the DNA obtained from the blood on the windowsill and the toilet paper roll. Appellant's DNA profile had been entered into the database because he was serving a seven (7) year sentence in Mississippi. Thereafter, police secured a search warrant to obtain a

---

1. Jacqueline Octavia Smith was charged in the same Information with Appellant. Smith, who had been in a romantic relationship with Appellant at the time of the murders, was charged with two counts of Accessory to Murder in the First Degree. Smith ultimately waived her right to a preliminary hearing and testified on behalf of the State.

DNA sample from Appellant. The search warrant was executed at the Mississippi prison in which Appellant was being housed. DNA testing confirmed Appellant's presence at the crime scene.

¶ 4 Additional facts relating to the murders need not be presented herein as Appellant does not allege any procedural or evidentiary issues occurred during the trial, nor does he challenge the sufficiency of the evidence supporting the jury's guilty verdicts.

## VIOLATION OF INTERSTATE AGREEMENT ON DETAINER'S ACT CLAIM

¶ 5 In his first proposition of error, Appellant contends his rights pursuant to the Interstate Agreement on Detainers (IAD) were violated when the State failed to bring him to trial within the 120 day timeframe mandated by Article IV(c) of the IAD. 22 O.S.2011, § 1347.

■ ¶ 6 The IAD is a compact among 48 states, the District of Columbia, Puerto Rico, the United States Virgin Islands, and the United States. *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985). It is a "congressionally sanctioned interstate compact" within the Compact Clause of the United States Constitution, Art. I, § 10, cl. 3. *Id.* Hence, the IAD is a federal law subject to federal construction. *Id.*; *New York v. Hill*, 528 U.S. 110, 111, 120 S.Ct. 659, 662, 145 L.Ed.2d 560 (2000). Oklahoma codified the IAD in 1977 in Title 22, Section 1345 *et seq.*

■ ¶ 7 The IAD provides cooperative procedures for transfers of prisoners between the federal and state jurisdictions that have adopted the interstate compact. The purpose of the IAD is "to encourage the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." 22 O.S.2011, § 1347 Art. I; *Carchman*, 473 U.S. at 720, 105 S.Ct. at 3403; *Bowie v. State*, 1991 OK CR 78, ¶ 14, 816

P.2d 1143, 1147. Moreover, as recognized by the Supreme Court:

> Adoption of the [IAD] was motivated in part by a practice of filing detainers based on untried criminal charges that had little basis. These detainers often would be withdrawn shortly before the prisoner was released. Even though unsubstantiated, the detainers would have a detrimental effect on the prisoner's treatment. Article III enables a prisoner to require the State lodging the detainer either to drop the charge and resulting detainer or to bring the prisoner to trial. In this way, the prisoner can clear his record of detainers based on unsubstantiated charges.

*Carchman*, 473 U.S. at 729–30, 105 S.Ct. at 3408–09 (internal citations omitted). Thus, included within the purpose of the IAD is the goal of preventing frivolous detainers through the speedy disposition of detainers to ensure that those filed for specious reasons do not linger. *Id.; see also Gilbreath v. State*, 1982 OK CR 147, ¶ 4, 651 P.2d 699, 700 ("Oklahoma enacted the IAD in 1977, to lessen the abuses arising out of the use of detainers."); *Ward v. Com.*, 62 S.W.3d 399, 402 (Ky. App. 2001) (IAD was enacted to eliminate potential abuses of the detainer system).

¶ 8 In the present case, Appellant was transferred from Mississippi to Oklahoma at the State's request pursuant to Articles IV and V of the IAD. The fact Appellant had been transferred to Oklahoma pursuant to the IAD was never acknowledged or raised until Appellant's *formal sentencing hearing*—well after the completion of his jury trial. And, even then, the issue was raised by the trial court—not Appellant. At the start of Appellant's formal sentencing hearing on April 13, 2015, the trial court advised he had discovered a Request for Temporary Custody filed pursuant to the IAD in the record.[2] The trial court directed the parties to "look into this" and specifically research the issue of waiver. The hearing was then continued until April 23, 2015. At the April 23rd sentencing hearing, the trial court heard argument on the issue and ultimately determined Appel-

---

2. The request was file stamped on July 30, 2013.

lant had "effectively waived" the statutory rights provided by the IAD. We agree.

¶ 9 Article IV provides in pertinent part:

(c) In respect of any proceeding made possible by this article, trial shall be commenced within one hundred twenty (120) days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

22 O.S.2011, § 1347. Article V(c) provides:

If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not *brought to trial* within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

*Id.* (emphasis added).

 ¶ 10 The mandatory 120 day time limit can be extended by the proper tolling of the statute if the State can demonstrate "good cause" for such tolling. *Bowie*, 1991 OK CR 78, ¶ 14, 816 P.2d at 1147. Here, approximately 565 days passed from the time Appellant arrived in Tulsa on September 18, 2013, and ultimately went to trial on April 6, 2015. Notably, there is no evidence in the record before us that the State deliberately or negligently attempted to thwart Appellant's IAD rights. While the record clearly demonstrates some of the delays were for good cause, a proper record establishing good cause was not made in relation to a great many of the continuances. Nonetheless, this Court need not determine if the mandated 120 days was properly tolled as we find

Appellant waived any rights granted to him under the IAD when he proceeded to trial.

¶ 11 In *New York v. Hill,* the United States Supreme Court held that a defendant can implicitly waive the IAD's time constraints by accepting treatment inconsistent with the IAD's time limits. 528 U.S. at 118, 120 S.Ct. at 666. In rejecting the argument that waiver is possible only by affirmative conduct, the *Hill* Court reasoned

such an approach would enable defendants to escape justice by willingly accepting treatment inconsistent with the IAD's time limits, and then recanting later on. Nothing in the IAD requires or even suggests a distinction between waiver proposed and waiver agreed to. In light of its potential for abuse—and given the harsh remedy of dismissal with prejudice—we decline to adopt it.

*Id.*

¶ 12 In the 565 days leading up to his trial, Appellant appeared before the trial court on numerous occasions without ever raising the issue of noncompliance with the IAD. By failing to raise the issue prior to the commencement of his trial, Appellant acquiesced to treatment inconsistent with the IAD's time limits. *Hill,* 528 U.S. at 118, 120 S.Ct. at 666; *see also Rackley v. State,* 1991 OK CR 70, ¶ 10, 814 P.2d 1048, 1051 (defendant waived any rights granted to him under the IAD when he proceeded to trial on the charges without challenging his transfer from federal to state custody); *Ward,* 62 S.W.3d at 403 (defendant waived his right to complain about IAD violation by acquiescing to be tried outside the required time period and failing to raise the issue of alleged noncompliance prior to the expiration of the 120 day time limit).[3]

 ¶ 13 Moreover, while the trial court inquired into the implications of the IAD on Appellant's conviction, the issue was no longer pertinent as the protections provided to Appellant through the IAD had already ter-

---

**3.** We recognize in *Ullery v. State* the Court all but said the issue was waived on similar facts, but ultimately bypassed the issue in favor of resolving the accompanying ineffective assistance of counsel claim. 1999 OK CR 36, ¶ 7, 988 P.2d 332, 339–40. However, we find the reasoning set

forth in *Hill*—decided shortly after this Court's decision in *Ullery*—to be persuasive. By finding Appellant waived his IAD rights this Court is not evading the substantive issue presented herein as *Ullery* implied a finding of waiver would do, but is calling a spade a spade.

minated. The safeguards provided by the IAD extend to the commencement of trial, but not beyond. *See* 22 O.S.2011, § 1347 Art. V(c) (indictment, information or complaint must be "brought to trial" within the period provided by Article IV); *Bowie*, 1991 OK CR 78, ¶ 14, 816 P.2d at 1147 ("The statute does not require that a final verdict be had within [the 120 day] limit, only that the trial commence."); *United States v. Coffman*, 905 F.2d 330, 332 (10th Cir. 1990) (the term "trial" as used in the IAD reflects a decision to limit the scope of the IAD and does not include sentencing). Thus, Appellant waived any rights granted to him under the IAD—along with his ability to subsequently complain such rights had been violated—when he proceeded to trial.

¶ 14 Appellant's first proposition of error is denied.

### INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

¶ 15 In his second and final proposition of error, Appellant argues his trial counsel was ineffective for failing to raise the issue of Appellant's IAD rights prior to trial. To prevail on an ineffective assistance of counsel claim, a defendant bears the burden of showing both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *See also Harrington v. Richter*, 562 U.S. 86, 104, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011) (summarizing *Strickland* two-part test); *Tate v. State*, 2013 OK CR 18, ¶ 38, 313 P.3d 274, 284; *Maxwell v. State*, 1989 OK CR 22, ¶ 7, 775 P.2d 818, 820. "Unless the defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Malone v. State*, 2013 OK CR 1, ¶ 14, 293 P.3d 198, 206 (internal quotations omitted). Moreover, "[w]hen a claim of ineffectiveness of counsel can be disposed of on the ground of lack of prejudice, that course should be followed." *Malone*, 2013 OK CR 1, ¶ 16, 293 P.3d at 207. In the present case, even assuming arguendo counsel's performance was deficient, Appellant's claim fails to show *Strickland* prejudice.

¶ 16 To demonstrate prejudice a defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial would have been different. *Daniels v. State*, 2016 OK CR 2, ¶ 9, 369 P.3d 381, 384. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068). "The likelihood of a different result must be substantial, not just conceivable." *Malone*, 2013 OK CR 1, ¶ 16, 293 P.3d at 207 (quoting *Richter*, 131 S.Ct. at 792).

¶ 17 Appellant essentially asks this Court to assume that had his trial counsel asserted Appellant's IAD rights prior to trial, his case would have been dismissed with prejudice. Again, this issue was raised for the first time post-verdict by the trial court. Thus, the record on appeal was not developed in a manner to support or refute an IAD claim. We cannot blindly make the leap necessary to find prejudice in this case based on speculation alone. *See Gonzalez v. Knowles*, 515 F.3d 1006, 1015–16 (9th Cir. 2008) (speculation is insufficient to establish *Strickland* prejudice). Notably, during the course of Appellant's case, Appellant was appointed three separate attorneys. We can only speculate what would have occurred if at some point one of these three attorneys had raised the issue. Moreover, had Appellant flagged this issue some time prior to trial, it is not unrealistic to assume the trial court could have complied with the IAD's requirements. Nor is it unrealistic to assume that the trial court would have advanced the date of the trial or otherwise ensured a proper record was made establishing good cause for delay, either of which would have satisfied Article IV(c). *See Reed v. Farley*, 512 U.S. 339, 350–51, 114 S.Ct. 2291, 2298, 129 L.Ed.2d 277 (1994).

¶ 18 The history of this case cannot be rewritten. Given the harsh remedy of dismissal with prejudice, this Court cannot find *Strickland* prejudice resulted through assumptions and speculation. Appellant has failed to present any evidence demonstrating the reasonable probability of a different re-

sult in the proceedings. Appellant's ineffective assistance of counsel claim is therefore conclusory and speculative. To find *Strickland* prejudice under the circumstances would "enable defendants to escape justice by willingly accepting treatment inconsistent with the IAD's time limits." *Hill*, 528 U.S. at 118, 120 S.Ct. at 666.

¶ 19 Additionally, a significant purpose of the IAD is to prevent frivolous detainers as well as prejudice to a defendant's ability to present a defense at trial caused by delay. *See Carchman*, 473 U.S. at 729–30, 105 S.Ct. at 3408–09; *Gilbreath*, 1982 OK CR 147, ¶ 4, 651 P.2d at 700. The legitimacy of the State's detainer was validated by Appellant's conviction. This leaves the issue of whether Appellant's ability to present a defense was prejudiced or impaired by delay. No such allegation or showing is made here.

¶ 20 Appellant has thus failed to "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067. He is therefore not entitled to relief and his final proposition of error is denied.

## DECISION

¶ 21 The Judgments and Sentences of the district court are **AFFIRMED**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2016), the **MANDATE** is **ORDERED** issued upon delivery and filing of this decision.

SMITH, P.J.: CONCUR

LUMPKIN, V.P.J.: CONCUR

JOHNSON, J.: CONCUR IN RESULTS

LEWIS, J.: CONCUR IN RESULTS