OLIVER v. STATE
2022 OK CR 15
Case Number: F-2021-482
Decided: 08/11/2022
NICHOLAUS MARK OLIVER, Appellant v. THE STATE OF OKLAHOMA, Appellee.
Cite as: 2022 OK CR 15, __ __

 

 

SUMMARY OPINION

LUMPKIN, JUDGE:

¶1 Appellant, Nicholaus Mark Oliver, was tried by jury and convicted in the District Court of Canadian County, Case No. CF-2018-698, of Domestic Abuse by Strangulation, in violation of 21 O.S.2011, § 644

¶2 From this judgment and sentence, Appellant appeals and raises the following propositions of error:

I. THE DISTRICT COURT ERRED WHEN IT ALLOWED EXPERT WITNESSS TESTIMONY THAT IMPERMISSIBLY VOUCHED FOR THE VICTIM.

II. THE DISTRICT COURT ERRED WHEN IT FAILED TO HOLD A DAUBERT HEARING ON THE EXPERT WITNESS EVIDENCE OF KERI THOMPSON, RN, AND DETECTIVE EDWARD MOSIER.

III. DETECTIVE [MOSIER] TESTIFIED BEYOND HIS EXPERTISE AS A LAW ENFORCEMENT DETECTIVE.

IV. THE DISTRICT COURT ERRED WHEN IT PERMITTED THE PROSECUTOR TO IMPROPERLY SHIFT THE BURDEN TO THE DEFENDANT DURING CLOSING ARGUMENT.

V. THE DISTRICT COURT ERRED WHEN IT IMPROPERLY INSTRUCTED THE JURY AS TO THE DEFINITION OF GREAT BODILY HARM.

VI. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE II, §§ 7 AND 20 OF THE OKLAHOMA CONSTITUTION.

VII. THE EVIDENCE SUBMITTED AT TRIAL WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR DOMESTIC ABUSE BY STRANGULATION.

VIII. EVEN IF INDIVIDUAL ERRORS DO NOT MERIT REVERSAL OF THE APPELLANT'S CONVICTION, THE CUMULATIVE ERROR [SIC] OF THESE ERRORS DEPRIVED HIM 0F A FAIR TRIAL REQUIRING THE REVERSAL OF THE APPELLANT'S CONVICTION.

¶3 After thorough consideration of these propositions and the entire record before us on appeal including the original record, transcripts, and briefs of the parties, we have determined that under the law and the evidence, Appellant is not entitled to relief.

I.

¶4 In his first proposition, Appellant takes issue with the testimony of Keri Thompson, R.N., that victim Leslie Pfrehm's symptoms she related during Thompson's examination of her were consistent with domestic abuse by strangulation. He contends Thompson vouched for Pfrehm's credibility. Review of this claim is for plain error as Appellant lodged no vouching objection to Thompson's testimony at trial. Brewer v. State, 2019 OK CR 23450 P.3d 969Simpson v. State, 1994 OK CR 40876 P.2d 690Id., 1994 OK CR 40.

¶5 "Vouching' occurs when an attorney or witness indicates a personal belief in a witness's credibility, either through explicit personal assurances of the witness's veracity or by implicitly indicating that information not presented to the jury supports the witness's testimony." Bench v. State, 2018 OK CR 31431 P.3d 929

¶6 Thompson testified she was a registered nurse and domestic violence forensic nurse examiner, a registered nurse with specialized training in treatment of victims of domestic violence. She testified she observed petechial injuries on Pfrehm's scalp and in her right eye, she observed red marks on her upper chest and neck and a bruise by her left collarbone. Thompson testified these injuries were consistent with Pfrehm having been strangled. Thompson further testified regarding Pfrehm's emotional state during the examination and that it was consistent with her history of strangulation. This was not impermissible vouching as Thompson never indicated her personal belief that Pfrehm was telling the truth. She simply testified that based upon her experience as a nurse examining domestic violence victims who were strangled, Pfrehm's demeanor and injuries were consistent with her history of being strangled. There was no error in Thompson's testimony. Proposition I is denied.

II.

¶7 In Proposition II, Appellant maintains that the trial court should have held a hearing regarding the testimony of Thompson as well as that of Detective Edward Mosier, as set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). He argues their expert testimony concerned novel scientific evidence which required such a hearing. Review of this claim is for plain error as set forth in Proposition I since there was no objection to this testimony below. Brewer, 2019 OK CR 23

¶8 When expert testimony concerns novel scientific evidence, then it must be subjected to the pre-trial analysis set forth in Daubert. Taylor v. State, 1995 OK CR 10889 P.2d 31922 O.S.2011, § 40.7

¶9 Thompson's testimony regarding the physical injuries she observed on Pfrehm did not involve novel scientific knowledge. Strangulation injuries are well-documented in medicine and are well-known to medical professionals like Thompson. Moreover, Thompson's training and experience as a domestic violence nurse examiner allowed her to testify regarding certain statistics and effects of domestic violence strangulation upon victims. As shown above, our Legislature has seen fit to enact Section 40.7 to expressly allow testimony in this regard in domestic violence cases. There is nothing novel about this evidence.

¶10 Appellant also complains of Mosier's testimony regarding the effects of lack of oxygen to the brain, neck anatomy and pounds of pressure necessary to block the jugular vein and carotid artery. The evidence revealed that Mosier has eighteen years of experience as a police officer, that he has received training in strangulation injuries and specialized training in the investigation of sexual assault, domestic violence and stalking crimes. His reference to a 1940's study on the effects of lack of oxygen to the brain, neck anatomy and pounds of pressure necessary to block the jugular vein and carotid artery could hardly be viewed as novel scientific evidence. Again, strangulation injuries and the mechanism of strangulation are well-documented in medical materials, as shown by this 80 year old study and Mosier had received special training regarding these types of injuries.

¶11 As the evidence at issue was not novel scientific evidence, no Daubert hearing was required. No error occurred in the admission of Thompson's and Mosier's testimony. Proposition II is denied.

III.

¶12 Proposition III challenges Mosier's testimony as lying outside the parameters of his expertise. Review of this claim is for plain error as set forth in Proposition I since there was no objection to Mosier's testimony at trial.

¶13 A witness may be "qualified as an expert by knowledge, skill, experience, training or education[.]" 12 O.S.Supp.2013, § 2702Harris v. State, 2004 OK CR 184 P.3d 731See also Salazar v. State, 1996 OK CR 25919 P.2d 1120

¶14 Mosier testified regarding his law enforcement experience and specialized training, particularly in the areas of domestic violence strangulation and domestic violence crime investigation. He testified about his observations of Pfrehm during his interview with her, including that he saw petechial hemorrhaging in her right eye and bruising on her arms. Based upon his training and experience, Mosier testified regarding the effects of strangulation, including that a victim could suffer short term memory problems due to lack of oxygen to the brain and he testified regarding the pressure necessary to block blood flow to the brain. Mosier's testimony was proper as it was based upon his personal observations of Pfrehm, as well as his expertise and knowledge of domestic abuse strangulation. Cf. Simpson v. State, 2010 OK CR 6230 P.3d 888Berry v. State, 1988 OK CR 83753 P.2d 926

IV.

¶15 In his fourth proposition, Appellant argues the prosecutor improperly made two burden-shifting comments during his closing argument. We review the first instance for an abuse of discretion as Appellant objected to it at trial. Bever v. State, 2020 OK CR 13467 P.3d 693Neloms v. State, 2012 OK CR 7274 P.3d 161 Wall v. State, 2020 OK CR 9465 P.3d 227

¶16 This Court reviews claims of prosecutorial misconduct "within the context of the entire trial, considering not only the propriety of the prosecutor's actions, but also the strength of the evidence against the defendant and the corresponding arguments of defense counsel." Mitchell v. State, 2010 OK CR 14235 P.3d 640Sanders v. State, 2015 OK CR 11358 P.3d 280Hanson v. State, 2003 OK CR 1272 P.3d 40

¶17 Appellant's defense at trial was complete innocence and that Pfrehm was lying. He testified in this manner. During closing argument, the prosecutor responded to Appellant's testimony and his defense, reminding the jury of the evidence presented which showed Pfrehm's injuries and corroborated her testimony. He then argued there was no evidence presented which contradicted the State's evidence of Pfrehm's injuries, other than Appellant's testimony. It is not improper for the prosecutor to reference the evidence presented and argue how the evidence showed that the defense theory was without merit and was unsupported by the evidence. See Bosse v. State, 2015 OK CR 14360 P.3d 1203judgment vacated on other grounds in Bosse v. Oklahoma, 137 S. Ct. 1 (2016) (the prosecutor properly argued to the jury that the appellant's alibi was unsupported by the evidence and no burden shifting occurred). The prosecution may also properly respond to the defense theory or to the defense characterization of the State's case. Taylor v. State, 2011 OK CR 8248 P.3d 362Browning v. State, 2006 OK CR 8134 P.3d 816

¶18 Appellant complains of a second portion of the prosecutor's closing argument, also made after he summarized the State's evidence. The prosecutor reminded the jury of a highway patrol trooper's duties, mainly keeping highways safe. He then told the jury Appellant had no medical expertise, but did not provide a medical expert to testify regarding Pfrehm's ability to fabricate evidence of strangulation sufficient to fool Thompson. This argument pointed out for the jury the dubious nature of Appellant's defense of complete innocence, supported only by his own testimony. "Where the defense has not offered evidence on an issue, the prosecutor may argue that the evidence is uncontroverted." Bosse v. State, 2017 OK CR 10400 P.3d 834Id. There was no error in the prosecutor's argument. Proposition IV is denied.

V.

¶19 In Proposition V, Appellant claims the trial court erred by instructing the jury with the definition of the phrase "great bodily harm" given in response to a jury question submitted during deliberations. Review of this claim is for an abuse of the trial court's discretion as set forth in Proposition IV as Appellant objected to this instruction. Davis v. State, 2018 OK CR 7419 P.3d 271Runnels v. State, 2018 OK CR 27426 P.3d 614

¶20 The jury received Instruction No.4-26D, OUJI-CR (2d).Sean Daniel Simmons v. State, No. F-2018-358 (September 12, 2019) (unpublished), which determines that in the context of the crime of domestic abuse by strangulation set forth in 21 O.S.Supp.2014, § 644Simmons. There, Judge Rowland determined that the majority opinion in Simmons created an "irrebuttable presumption of intent whenever strangulation is shown."

¶21 Relying upon Simmons, the trial court defined the phrase "great bodily harm" as follows: "[i]ntentional strangulation or its attempt, as defined in the instructions, is great bodily harm as set out in the sixth element of domestic abuse by strangulation. Great bodily harm requires no more in the way of specific intent than proof of intentional strangulation or attempted strangulation."

¶22 Appellant argues the definitional instruction given by the trial court was an abuse of discretion in that the instruction created a presumption that strangulation or its attempt, alone, equates to great bodily harm, thereby rendering the "with intent" element of the statute and instruction meaningless. The State simply avers that the trial court's instruction was based upon Simmons and references the sixth element of the crime charged and was therefore, not an abuse of discretion. We agree with Appellant that the trial court abused its discretion in giving the jury the definitional instruction. Instruction No. 4-26D, OUJI-CR (2d), by itself, allows the jury to determine if a defendant intended to cause great bodily harm in strangling a victim. By giving the subject definition, the trial court told the jury that intentional or attempted strangulation was great bodily harm. Thus, the jury could have believed that once it found that Appellant strangled Pfrehm, it necessarily had to find the sixth element of the crime charged was proven.

¶23 Although the trial court abused its discretion in giving the definitional instruction, no relief is required. The evidence was overwhelming that Appellant intended to cause Pfrehm great bodily harm. He intentionally got up from the bed, walked to Pfrehm's side of the bed, armed himself with the cord, forcibly placed the cord around her neck and pulled it tight. In fact, the cord was so tight that it caused petechial hemorrhaging in Pfrehm's right eye and on her scalp. He also threatened Pfrehm, telling her that "next time it would be worse." The jury was also properly instructed regarding the elements of the crime and the State's burden to prove every element of the crime charged beyond a reasonable doubt. In light of the evidence presented and the proper instructions given the jury, the erroneous instruction could not have affected the verdict. Cf. Ball v. State, 2007 OK CR 42173 P.3d 81

¶24 In order to eliminate confusion in the district courts, we find the phrase "great bodily harm" in the context of assault and assault and battery crimes should be defined as it is in Instruction No. 8-12, OUJI-CR (2d), to-wit: "Serious and severe bodily injury. Such injury must be of a greater degree than a mere battery." We urge the Oklahoma Uniform Jury Instruction Committee-Criminal to format and include the above definition of "great bodily harm" in the definitions contained in Instruction No. 4-28, OUJI-CR (2d) for assault and assault and battery crimes.

VI.

¶25 Ineffective assistance of counsel is the claim raised in Proposition VI. Appellant argues his counsel was ineffective for: failing to request a continuance; failing to request a Daubert hearing; and opening the door to bad acts evidence. This Court reviews ineffective assistance of counsel claims under the two-part test mandated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984). Malone v. State, 2013 OK CR 1293 P.3d 198Strickland test requires an appellant to show: (1) that counsel's performance was constitutionally deficient; and (2) that counsel's deficient performance prejudiced the defense. Id., (citing Strickland, 466 U.S. at 687).

¶26 The Court begins its analysis with the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689. Appellant must overcome this presumption and demonstrate that counsel's representation was unreasonable under prevailing professional norms and that the challenged action could not be considered sound trial strategy. Id. "When a claim of ineffectiveness of counsel can be disposed of on the ground of lack of prejudice, that course should be followed." Bland v. State, 2000 OK CR 114 P.3d 702Id., 2000 OK CR 11Harrington v. Richter, 562 U.S. 86, 112 (2011).

¶27 Continuance. This claim forms the basis of Appellant's Application to Supplement the Record and [for] Evidentiary Hearing, filed simultaneously with his brief pursuant to Rule 3.11(B)(3)(b), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2022). This Court reviews an application or motion under Rule 3.11(B)(3)(b) pursuant to the analysis set forth in Simpson, 2010 OK CR 6Id.

¶28 The record reflects that on May 3, 2021, before trial began on May 5, 2021, the State provided defense counsel with a thumb drive containing a Cellebrite dump from Pfrehm's cell phone. After picking the jury and before opening statements, during a recess, defense counsel informed the trial court of the receipt of the Cellebrite material two days earlier. He stated that the prosecution intended to object to the admission of any exhibits from the Cellebrite dump based upon lack of foundation, i.e., no police witness to sponsor them. The State acknowledged the late delivery of the Cellebrite material and advised it would not oppose a continuance for that reason. Defense counsel responded that there were texts in the material that he wanted to admit but he had not subpoenaed a witness to lay the foundation for the recovery of that material. He stated to the court that he sought assistance from the Oklahoma City Police Department in getting the person who recovered the material from Pfrehm's phone to appear at the trial the next afternoon, May 6, 2021. The trial court agreed to allow defense counsel time at the end of the day to contact the Oklahoma City Police Department and asked Mosier to assist in obtaining the desired witness.

¶29 From this exchange, four things are clear: 1) defense counsel knew the content of the Cellebrite material; 2) he had chosen the text messages he wanted to admit; 3) his only concern was to get a sponsoring police witness to testify regarding the recovery of those messages; and 4) he did not believe a continuance was necessary based upon the receipt of the Cellebrite material. Appellate counsel speculates in his extra-record affidavit "there may have been other text messages to support Appellant's theory of defense" contained in the Cellebrite material which were not used because of the short time period. He also complains that he has been unable to review the Cellebrite material. However, he ignores the above record evidence which contradicts his speculative argument that other Cellebrite material may have been helpful to the defense theory. Neither Appellant nor the State sought admission of any of the Cellebrite material at trial.

¶30 Based upon the record, it is plain counsel had possession and was aware of the contents of the Cellebrite material. Although initially advising the trial court he needed a sponsoring witness in order to admit certain parts of that material, he made the decision not to utilize it as part of his trial strategy, no doubt because the material had little or no evidentiary value. Cf. Snow v. State, 1994 OK CR 39876 P.2d 291See Fulgham v. State, 2016 OK CR 30400 P.3d 775

¶31 Appellant has not shown clear and convincing evidence of a strong possibility that counsel was ineffective based upon the allegations contained in his Rule 3.11 Application. Thus, we find he has not shown entitlement to supplementation of the record or to an evidentiary hearing on his claim of ineffective assistance of counsel. Appellant's Motion to Supplement or for Evidentiary Hearing is denied.

¶32 Daubert hearing. In Proposition I, we found no requirement for a Daubert hearing regarding Thompson's and Mosier's testimony as the testimony did not involve novel scientific evidence. Because we found no error in Proposition I, Appellant has failed to show his counsel was ineffective. Conroy-Perez v. State, 2019 OK CR 5440 P.3d 64

¶33 Opening the door to bad acts evidence. In opening statement, the prosecutor mentioned Appellant was on administrative leave from his job as a highway patrol trooper at the time of the crime. Pfrehm testified that Appellant "got in trouble" at work. Thereafter, on direct examination of Appellant, defense counsel asked him to tell the jury how being on administrative leave was affecting him. Appellant responded it had a "minor impact" on him because it was a "very minor internal issue with [Oklahoma Highway Patrol], with "no chance of any termination or any discipline." The prosecutor cross-examined Appellant on this issue, and Appellant testified he was under investigation for "off-duty [gasoline] usage" stemming from what he perceived to be a misunderstanding about use of his patrol car to drive from his home to Pfrehm's in the evening and leave from her home for work the next morning.

¶34 It is a common and well-recognized defense strategy for the defense to question a defendant about his prior bad acts in an effort to boost the defendant's credibility with the jury. Cf. Welch v. State, 2000 OK CR 82 P.3d 356i.e., "[t]o boost his credibility, defense counsel elicited the appellant's prior convictions and some of the facts about the Tulsa County crimes in an effort to show the appellant was willing to admit and take responsibility for his prior misconduct."). In this case, defense counsel's purpose was conceivably twofold, i.e., to enhance Appellant's credibility with the jury and to make clear to the jury that Appellant's administrative leave did not involve domestic violence allegations. This strategy was a sound one, based upon the record and was also successful, given Appellant's less than maximum sentence. Counsel was not ineffective for utilizing this strategy. Proposition VI is denied.

VII.

¶35 Proposition VII raises the claim that Appellant's conviction is insufficiently supported by the evidence adduced at trial. Appellant argues the State failed to prove he intended to cause great bodily harm to Pfrehm when he strangled her. This Court follows the standard for the determination of the sufficiency of the evidence which the United States Supreme Court set forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979). Easlick v. State, 2004 OK CR 2190 P.3d 556Spuehler v. State, 1985 OK CR 132709 P.2d 202any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; Easlick, 2004 OK CR 21Spuehler, 1985 OK CR 132Taylor, 2011 OK CR 8Davis v. State, 2011 OK CR 29268 P.3d 86Fuston v. State, 2020 OK CR 4470 P.3d 306James v. State, 1979 OK CR 82599 P.2d 411

¶36 Appellant maintains his testimony that he did not have an altercation with Pfrehm and the character of Pfrehm's injuries fail to establish his intent to cause great bodily harm to her. He is mistaken. The phrase "great bodily harm" is not defined in Section 644(J). However, Instruction No. 8-12, OUJI-CR (2d), defines the phrase as follows: "[s]erious and severe bodily injury. Such injury must be of a greater degree than a mere battery." Pfrehm's testimony about the events of the night of the crime and the other trial evidence clearly show Appellant's intent to cause Pfrehm great bodily injury and that her injuries were of a greater degree than those of a mere battery.

¶37 As set forth above, the jury is free to believe one witness over another and in this case, the jury clearly disbelieved Appellant's testimony and believed Pfrehm's. Based on the evidence, the jury could find that Appellant intended to cause Pfrehm great bodily harm when he strangled her. Proposition VII is denied.

VIII.

¶38 In his final proposition, Appellant seeks relief based upon the accumulation of error. As we found only a single error in Proposition V which we found harmless, there is no accumulation of error which can form the basis of a cumulative error finding. Neloms, 2012 OK CR 7

DECISION

¶39 The Judgment and Sentence of the district court is AFFIRMED, Motion for Evidentiary Hearing is DENIED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2022), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF CANADIAN 
COUNTY, THE HONORABLE PAUL HESSE, 
DISTRICT JUDGE

 
 
 
 APPEARANCES AT TRIAL

 JOHN CANNON
 809 E. 33RD STREET
 EDMOND, OK 73013
 COUNSEL FOR DEFENDANT
 
 
 APPEARANCES ON APPEAL

 EVAN W. KING
 620 N. ROBINSON, #201
 OKLAHOMA CITY, OK 73102
 COUNSEL FOR APPELLANT
 
 
 
 
 MITCHELL THROWER
 TAYLOR BROWN
 ASST. DISTRICT ATTORNEYS
 303 N. CHOCTAW
 EL RENO, OK 73036
 COUNSEL FOR STATE
 
 
 JOHN M. O'CONNOR
 ATTORNEY GENERAL
 SAMANTHA K. OARD
 ASST. ATTORNEY GENERAL
 313 NE 21ST STREET
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR APPELLEE
 
 
 

 

OPINION BY: LUMPKIN, J.
ROWLAND, P.J.: Concur
HUDSON, V.P.J.: Concur
LEWIS, J.: Concur in Part/Dissent in Part
MUSSEMAN, J.: Concur

FOOTNOTES

First, willful; Second, unlawful; Third, attempting or offering to use force or violence; and Fourth, the use of force or violence; Fifth, was against a person with whom the defendant has had a child; Sixth, with the intent to cause great bodily harm by strangulation. Strangulation means any kind of asphyxia, including but not limited to, closure of the blood vessels or air passages as a result of external pressure on the neck.

 

 

LEWIS, J., CONCURRING IN PART AND DISSENTING IN PART

¶1 I concur in affirming the judgment, but dissent from the discussion of Proposition Five and the instruction on intent to cause great bodily harm. The Court today dilutes both the abuse of discretion standard and the statutory protections against domestic abuse by strangulation. To suggest the trial court abused its discretion--that it made a clearly erroneous ruling--by borrowing language from the Simmons plurality for a supplemental mens rea instruction, is an affront to independent judicial thinking. The trial court is simply caught up in a disagreement among the Members of this Court. The majority should say so, rather than couch today's holding in the language of a judicial mistake.

¶2 What of this Court's preferred interpretation of the statute on domestic abuse by strangulation? The plurality in Simmons said that the required "intent to cause great bodily harm by strangulation" is satisfied by proof of strangulation or its attempt. This seemed to be the fair import of the plain language of the statute. It seemed absurd to say that the Legislature had intended additional evidence of this intent beyond proof that the defendant had strangled or attempted to strangle a domestic relation.

¶3 This was no presumption (a substitute for proof) but rather a conclusion that strangulation--which the statute invariably defines as assault and battery causing or attempting asphyxia by external pressure--is both the necessary and sufficient fact from which the court or jury can infer intent to do great bodily harm. Some Members of the Court rejected this reasoning then, and they reject it today: "By giving the subject definition, the trial court told the jury that intentional or attempted strangulation was great bodily harm." Read that again. Is this a clearly erroneous application of the statute? I still think not.

¶4 The complainant was forcibly strangled with a ligature. She suffered petechial hemorrhages of the scalp and right eye, red marks to her chest and neck, a bruise to the collarbone, and extreme emotional distress. Expert testimony showed the well-known effects of strangulation on short-term memory, the force needed to close the vessels of the neck, and so forth. It beggars belief that the Legislature had something more in mind for showing intent to cause great bodily harm than proof of a defendant's voluntary performance of such heinous acts.

¶5 The Court ultimately concludes in this case, just as it unanimously did in Simmons, that the evidence of strangulation (what else?) plainly showed the intent to cause great bodily harm. And even here--where the instruction theoretically imposed the "irrebuttable presumption" that concerned some Judges in Simmons--the Court cannot bring itself to say the alleged error influenced the verdict.

¶6 The trial court's instruction was consonant with the legislative text and with sound discretion. The definition mandated today, requiring a finding of intent to cause "serious and severe bodily injury . . . of a greater degree than a mere battery," surely encompasses every conceivable case of strangulation as defined by the statute, but offers a nebulous, if not contradictory, description of the proof relevant to the jury's consideration. The trial court's handcrafted instruction provided better guidance, and certainly involved no abuse of its discretion to instruct the jury.